## DOWSE v. DORIS TRUST CO.

No. 7220.   Decided July 28, 1949.   (208 P. 2d 956.)

See 53 C. J. S., Libel and Slander, sec. 270.  Slander of Title, see note, 9 A. L. R. 931.  See, also, 33 Am. Jur. 310.

*David A. West,* Salt Lake City, for appellant.

*Duncan & Duncan,* Salt Lake City, *Milton V. Backman,* Salt Lake City, for respondent.

WADE, Justice.

This is an appeal by the defendant, Doris Trust Company, from a judgment awarding special and exemplary damages in a suit for slander of title.

Plaintiff below and respondent herein, had alleged in his complaint that he was the owner of certain real property and that defendant, the appellant herein, had

"falsely and maliciously and with intent to encumber and cloud plaintiff's title to said lands, and to harass and vex plaintiff in the quiet enjoyment thereof, caused to be recorded in the office of the County Recorder of Salt Lake County, State of Utah, the following:
"1008121
"Doris Trust Company
"1430 South Main Street
"Salt Lake City, Utah, Aug. 9, 1945

"NOTICE

"To whom it may concern:—That certain property described as: All of Lots one to eleven in Fox's subdivision, an addition to Salt Lake City, Utah—was purchased for Doris Trust Company by S. W. Dowse, as their agent. That One Thousand Dollars has been paid toward the purchase price and that the balance, plus a reasonable commission will be paid on demand on delivery of deed.
"(signed)    Addison Cain
"President Doris Trust Co.

"State of Utah       ⎱
"County of Salt Lake ⎰ SS

"Addison Cain being first duly sworn, did say that he is President of Doris Trust Company—has full knowledge of the within statement and that same is true of his own knowledge.
"(signed)  L. B. Cardon
"Notary Public

"(Seal)   My commission expires May 26, 1948.
"Recorded at request of Addison Cain, Aug. 9, 1945, at 2.50 M fee paid $.50
"Cornelia S. Lund, Recorder, Salt Lake County, Utah
"(signed)  Cornelia S. Lund"

Plaintiff further pleaded that the claim set forth in the above instrument was false and that defendant had no interest whatever in the premises and that the recording of that instrument cast a cloud upon and a slander on his title to said property, thereby decreasing its value and making it unmarketable and that he, therefore, was unable to sell it or offer it for sale and was compelled to commence a suit to remove the cloud from his title and to employ counsel to do so at a cost of $250.00. Plaintiff then prayed for special damages in the sum of $250.00 and punitive damages in the sum of $5000.00.

Defendant filed general and special demurrers to the complaint which were overruled by the court. We shall hereafter refer to the parties herein as plaintiff and defendant as they were in the lower court.

The evidence disclosed that on July 17, 1945, plaintiff became the owner of the property involved in this suit and recorded the deed on July 18, 1945. On July 31, 1945, defendant gave plaintiff a check for $1000.00 to be applied on the purchase price of this property. Subsequently a disagreement developed between them as to the amount of the purchase price. There had been no written memorandum of the transaction and defendant had never obtained possession. Plaintiff refused to let defendant have the property at his own price whereupon the defendant caused the instrument complained of to be recorded. Defendant admitted that plaintiff was not his agent for the purpose of purchasing the property but explained that he recorded it to protect the $1000.00 which he had paid plaintiff to be applied on the purchase price, knowing that it would affect its vendibility some even though there were tax sales and a tax deed which would also affect the sale of it. It could not be doubted from defendant's own testimony that he placed the notice on record so that it would be difficult for plaintiff to sell or mortgage the property.

At the conclusion of the testimony both defendant and plaintiff moved for directed verdicts. The court denied the

defendant's motion and granted plaintiff's motion in so far as it referred to special damages but submitted the question of general damages to the jury.

It is defendant's contention that the court erred first when it overruled its demurrers and secondly when at the conclusion of the trial it denied its motion for a directed verdict because the plaintiff had failed to allege or prove falsity of the words published, malice, and special damages.

As we have shown above plaintiff had pleaded that the claim set forth in the instrument recorded by defendant was false. That was a sufficient averment of falsity. The instrument claimed that the land apparently owned by plaintiff in reality belonged to defendant because it had been purchased by plaintiff as agent for defendant. This claim was false. It is not necessary, as argued by defendant, that all the words be false, it is sufficient if the statement which disparages the plaintiff's interest in his property is false.

In the Restatement of the Law on Torts, Vol. III, Sec. 624, page 325, the general rule as to what acts will make one liable for slander of title is stated as follows:

"One who, without privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused."

On page 326 it is further stated:

"Special Note: The idea expressed in the Restatement by the phrase 'without a privilege to do so' is in common legal speech often expressed by the statement that the disparaging matter was published maliciously. The word 'malice' is used throughout the Restatement to denote ill will or desire to do harm for the satisfaction of doing it. The fact that an act will necessarily result in harm to another and is not done for a purpose of sufficient importance to give the actor

a privilege to do it is expressed in the Restatement by saying that the act is done without a privilege to do it."

Defendant's president is a real estate broker with more than 40 years of experience in the business. At the time he filed the instrument he knew that he had no rights or interest in the property, and did so either to force plaintiff to sell to him or make it difficult to sell to ■ any one else, under such a state of facts his filing was malicious. See *Kelly* v. *First State Bank of Rothsay et al.,* 145 Minn. 331, 177 N. W. 347, 9 A. L. R. 929 and annotation on page 931. In the *Kelly* case the court held that the malicious filing for record of an instrument known to be inoperative is regarded as slander of title, but that if the person records an instrument he has a right to record, it is, of course, not slander of title. Under the pleadings and the facts proved, defendant did not have a privilege to record the instrument and his doing so was malicious.

Although the falsity of the statement and malice or lack of the privilege to do so in the disparagement of title are two important elements in a suit for slander of title, a plaintiff in a suit for slander of title, unlike a plain- ■ tiff in a suit for libel and slander of his person, cannot prevail unless he alleges and proves a pecuniary loss resulting from the act of the defendant.

It is defendant's contention that plaintiff having failed to allege and prove a particular sale or sales which had been lost because of its action that plaintiff had failed to present for the consideration of the court, an essential element of the action for slander of title, i. e., a ■ pecuniary loss. It is defendant's contention that attorney's fees are not recoverable as special damages and that such damages can only be proved by the loss of a particular sale which must be alleged as well as proved. It cites as authority for this contention the cases of *McGuinness* v. *Hargiss,* 56 Wash. 162, 105 P. 233, 21 Ann. Cas. 220, *Hubbard* v. *Scott,* 85 Or. 1, 166 P. 33, and *City of*

*Shreveport* v. *Kahn,* 194 La. 55, 193 So. 461. All of the above cases held that attorneys' fees are not recoverable in an action for slander of title. However, we are not impressed with the reasoning of those cases and others to the same effect. The action of slander of title is based on a wrongful act but for which the plaintiff would not have had to incur any expense, either for costs or for attorney's fees. The reasoning in *Chesebro* v. *Powers,* 78 Mich. 472, 44 N. W. 290, is more in harmony with justice. In that case the court, 44 N. W. on pages 291 and 292, said:

"The court was also in error in rejecting the testimony offered on the question of damages. The taxable costs in the chancery case may have fallen far short of compensating the plaintiff for all the costs and expenses he was necessarily put to in that proceeding. The rules as to taxable costs limit the amount to be recovered by the prevailing party, and may in many instances fall far short of full and complete recompense for an injury done from bad motives. Whether the defendants were actuated by malice, and wrongfully and willfully asserted the claim without just cause or excuse, is a question of fact for the jury. But the court excluded the plaintiff's testimony upon this question. If, upon the proofs, the jury found that the defendants acted maliciously, and under a claim which they knew to be false, for the purpose of vexing and harrassing the plaintiff, and thereby compelled him to a settlement of a claim which they knew to be wrongful, then the plaintiff would not be limited to his taxable costs, and any other reasonable outlay by him in removing the cloud from his title would be damages for which he could recover. This is not entirely a new question in this state. In *Brand* v. *Hinchman,* 68 Mich, 590, 36 N. W. 664 [13 Am. St. Rep. 362], the action was brought to recover damages for falsely and maliciously attaching the property of the plaintiff, and Mr. Justice Morse, after a review of the many cases bearing upon the question, said: 'The matter of costs I do not consider a sufficient reason for denying remedy, as the costs under our practice awarded the prevailing party are never sufficient to reimburse him for the actual cash expenses of the litigation, to say nothing of the loss of time and the inconvenience and trouble suffered.' "

The reasoning in the above case would seem to be in conformity with the rule stated in the Restatement of the Law of Torts, Sec. 633, pages 347-8, wherein it is stated:

"The pecuniary loss for which a publisher of disparaging matter is liable under the rules stated in Secs. 624 and 626-627 is restricted to

"(a) that pecuniary loss which directly and immediately results from the impairment of the vendibility of the thing in question caused by publication of the disparaging matter, and

"(b) the expense of litigation reasonably necessary to remove the doubt cast by the disparagement upon the other's property in the thing or upon the quality thereof."

Attorney's fees are certainly a reasonable expense of litigation. Plaintiff testified that he had some inquiries about the land but had been unable to sell the property with defendant's instrument on record and that was the reason he brought the suit to quiet title. Defendant did not deny that he placed the instrument on record knowing that he did not have an enforceable contract to buy the land for the purpose of preventing plaintiff from mortgaging or selling it. Under such circumstances the court did not err in directing a verdict in favor of plaintiff as to the special damages. The court submitted to the jury the question of punitive damages. That punitive damages may be awarded in an action for slander of title see *Hopkins* v. *Drowne*, 21 R. I. 20, 41 A. 567.

Affirmed. Costs to respondent.

PRATT, C. J., and WOLFE, LATIMER and McDONOUGH, JJ., concur.