[Civ. No. 18702. First Dist., Div. One. Aug. 23, 1960.]

CONTRA COSTA COUNTY TITLE COMPANY (a Corporation), Plaintiff, v. ELSIE L. WALOFF, Appellant; LUCY E. MOFFITT, Respondent.

Francis P. Healey for Appellant.

Bernheim, Sugarman & Gilbert for Respondent.

QUAYLE, J. pro tem.*—Contra Costa County Title Company, a corporation, filed an action in interpleader, under section 386 of the Code of Civil Procedure, to determine ownership of $3,100. This money had been deposited with it by appellant Elsie L. Waloff, hereinafter referred to as buyer, to be paid to respondent Lucy E. Moffitt, hereinafter referred to as seller, when and if a sale of certain real property was consummated.

Buyer and seller contracted in writing for the sale of seller's home and buyer had paid $500 to seller by way of deposit. Buyer also placed $3,100 into escrow with the title company to be applied on the purchase price. The sale was never closed so buyer and seller were joined as defendants. Each of them filed cross-complaints against the other. Seller sought damages alleging slander of title to said real property and for a decree quieting title thereto. Buyer sought return of the $3,100 she had put into escrow and repayment from seller of the $500 deposit.

The action in interpleader was dismissed by the court. Judgment was entered in favor of seller on her cross-complaint

*Assigned by Chairman of Judicial Council.

awarding her $1,500 damages resulting from the slander of title to the real property and quieting seller's title thereto. The $500 deposit was declared forfeited. The clerk of the court was ordered to remit the $3,100 on deposit to buyer after she had satisfied this judgment, or in the alternative, to deduct the amount due seller and remit the remainder to buyer. Buyer appeals from said judgment.

## FACTS

Seller, Lucy E. Moffitt (defendant, cross-defendant, cross-complainant and respondent herein) owned and resided in certain residential property in Richmond, California. She advertised in the newspaper in order to sell it. On or about September 8, 1956, buyer, Elsie L. Waloff (defendant, cross-complainant, cross-defendant and appellant herein) called upon seller and negotiated for the sale of said property. The record discloses that seller was inexperienced in real estate transactions and that buyer was a woman who had experience both with real estate and with the law. Buyer prepared and submitted to seller a deposit receipt bearing her signature. Seller delayed the affixing of her signature until the following day in order to check over the provisions of the agreement. This deposit receipt is dated September 8, 1956, but apparently was not signed by buyer until September 9, 1956. It provides for the sale of said property for a purchase price of $12,350, with a deposit of $500 received, the balance to be paid within 30 days from acceptance thereof by seller as follows, to wit: "Cash down to loan, to be negotiated by Buyer. Seller shall be permitted to remain on premises for a period of 30 days after closing. Prorations to be made as of date of possession by Buyer, and in all probability will be November 1, 1956 . . ."

During the following three weeks several discussions took place between buyer and seller as to F.H.A. financing and date of possession. On September 17, 1956, buyer sold the home in which she was residing and promised to give up possession of it by November 1, 1956. An undated letter from buyer to seller written between September 24 and 27, 1956, mentioned this fact and indicated that seller should have her papers and instructions in escrow by October 1, 1956.

On September 28, 1956, seller deposited her deed with the title company under escrow instructions consistent with the terms of sale agreed upon. Buyer at that time was urging seller to permit her to take possession at a date earlier than thirty days after closing the escrow. To this end seller signed

and delivered a letter, called an "amendment" to the original agreement of sale, in which she consented to yield possession not later than October 31, 1956, if buyer put the balance of the purchase price into escrow in time to permit closing by October 6, 1956; otherwise the deal was to be consummated as originally agreed, to wit: Possession to buyer 30 days after escrow closed.

Buyer did not place the balance of the purchase price in escrow by October 6, 1956, or at all. She embarked on a course of conduct which included accusations of fraud and deceit on the part of seller and alleged that delay in closing was caused by seller. Buyer's chief complaint was that seller induced her to purchase the real property, by orally promising to give her certain furniture and furnishings that were in the house. Although the written agreement made no reference to these items and specified that all terms agreed upon were incorporated therein, buyer insisted that this personal property be conveyed to her or $1,000 be withheld from seller until possession of the premises and settlement of this claim was effected. Still anticipating that buyer would fulfill the contract, seller rented an apartment at $67.50 per month so that she would be in a position to yield possession to buyer in the manner agreed.

On October 19, 1956, seller refused to permit the withholding of $1,000 or any modification of the agreement and requested the buyer to carry out the original contract. Instead buyer executed on October 23, 1956, and recorded on October 24, 1956, a document entitled "Rescission of Contract and Demand for Return of Deposit and Other Costs." Buyer admitted that she knew this act on her part would have the effect of clouding seller's title and that she did it for that purpose. This document accused seller of chicanery, fraud, misrepresentation, of taking the deposit under false pretenses, and that seller was unqualified to sell her own property.

On October 26, 1956, buyer made a new offer to purchase the property. Seller's attorney advised buyer she must perform the original contract or forfeit the $500 deposit. Buyer's response was a written threat to sue; a demand that seller return the deposit; and a demand upon the title company that $3,100 in escrow be returned to her.

On December 4, 1956, the title company advised buyer in writing that seller had placed with it a Mutual Cancellation Agreement to terminate further dealings between the parties as to this property. Buyer refused to execute it. On January

3, 1957, buyer executed a "Notice of Pending Escrow," which she recorded on January 4, 1957. On February 14, 1957, one Delucchi offered to buy the property in question but could not get good title from seller because of the recordation of the documents above referred to.

On April 26, 1957, buyer advised the title company that she intended to go through with the original agreement. But she failed to secure a bank loan or complete F.H.A. financing or place the balance of the purchase price into escrow. On May 8, 1957, the title company filed a complaint in interpleader naming buyer and seller as defendants and deposited the sum of $3,100 in court.

At the trial buyer admitted that seller's property depreciated $350 during the period of time that these events were taking place. She further testified that seller was not qualified to sell her own property. The evidence showed that a real estate broker's commission on such a sale would be at least $600. Seller expended $135 on renting an apartment so she could move out and give buyer possession by November 1, 1956. These elements of damage total $1,085.

The court found that buyer failed and refused to pay the balance due under the terms of the agreement; that buyer in recording said "Rescission of Contract and Demand for Return of Deposit and Other Costs" and said "Notice of Pending Escrow" acted maliciously and in order to vex and harass seller and that she knew that recording said instruments would decrease the value of the land and render it unmarketable. Damages were awarded to seller from buyer in the sum of $1,000 general damages and $500 for attorney's fee necessarily incurred in clearing title to said real property, total damages $1,500.

### Issues

In her appeal to this court buyer contends that: (1) The evidence does not support the judgment in favor of seller on the cause of action alleging slander of title; (2) Seller is not entitled to recover, by way of damages, the attorney's fees incurred in clearing her slandered title.

### Does the Evidence Support Findings of Slander of Title?

Buyer claims that she rescinded the contract to purchase seller's property and that the document she recorded on October 24, 1956, was merely notice of this action on her part. This document alleged that ". . . certain representations made by Seller were not as Seller represented; that seller also attempted to sell said premises to other persons

after taking a deposit from the undersigned, on a sale she had agreed upon; that the undersigned has used reasonable diligence to get Seller to go through with said sale, upon the original understanding that led up to the signing of the contract of sale. That said Agreement of Sale was obtained from the undersigned under conditions other than honorable. That chicanery was used in obtaining an amended deposit receipt.'' The record reveals nothing that would support any of these charges.

There is no arbitrary right to rescind. ▉▉ Allegations of fraud and misrepresentation, unsupported in fact, do not form the legal basis for rescinding a contract. Section 1689, subdivision 2, of the Civil Code, provides that ''A party to a contract may rescind the same in the following cases only: . . .

2. If, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part; . . .''

▉ One seeking rescission on account of fraud must be actually deceived by misrepresentation of a material fact and the other party must have intended to deceive by a misrepresentation of such material fact. Further, the party seeking to rescind must rely upon the fraudulent representation to his injury and damage before he can have the contract rescinded. *Rouse* v. *Morgan*, 108 Cal.App. 315, 320 [291 P. 441].

▉ There was no evidence in this case of any misrepresentation or fraudulent conduct on the part of seller. She did try to sell the property in question to one Delucchi in February of 1957, but that was over three months after the recording of the rescission, so buyer was not referring to this incident. On September 28, 1956, seller did sign a letter referred to as an ''amendment'' to the original contract. In this document the seller promised to yield possession of the premises to buyer not later than October 31, 1956, if buyer put her money into escrow in time to close the sale by October 6, 1956. This was a concession sought by buyer. The same document also provided that unless the escrow was closed by October 6, 1956, the original terms would remain in effect and buyer would be entitled to possession 30 days after closing. Certainly neither of these incidents would justify buyer's rescission.

The negotiations that brought about the original agreement of September 8, 1956, were largely instigated by buyer. She contacted the seller about the deal. She prepared the deposit receipt, signed it, and presented it to seller for acceptance.

Buyer thereafter sought certain changes in it. Seller refused to modify except to the extent indicated in the letter of September 28, 1956. It is clear that the court had ample evidence to support a finding that buyer had no legal cause to rescind.

Appellant and respondent agree that *Fearon* v. *Fodera*, 169 Cal. 370 [148 P. 200, Ann.Cas. 1916D 312], and *Gudger* v. *Manton*, 21 Cal.2d 537 [134 P.2d 217], state correctly the law applicable to actions for slander of title. █ These cases point out that the gist of said action lies in the making of false statements disparaging one's title, done with malice which may be express or implied.

█ Buyer claims that the two documents which she recorded contain no false statements and therefore cannot be the basis for recovery for slander of title. She contends that she thought she was entitled to rescind and therefore the document entitled "Rescission of Contract and Demand for Return of Deposit and Other Costs" recorded on October 24, 1956, was a public demand for the return of her money rather than a claim of interest in the land. The fact was that buyer had no cause to rescind; therefore her opinion on the subject was immaterial. In any event, on January 4, 1957, she recorded a "Notice of Pending Escrow." The legal effect of this was certainly to warn anyone dealing with seller's land that buyer had some claim involving it and that any transfer might be subject to that claim. Indeed the evidence shows that the Delucchi sale failed by reason of the inability to give clear title because of these recorded documents, both of which particularly describe the real property in question. This supports the finding that seller's title to the land was disparaged by these acts.

█ Buyer also claims that there was no evidence to support a finding of malice which is necessary in actions for slander of title. Implied malice is all that is required. (*Phillips* v. *Glazer*, 94 Cal.App.2d 673 [211 P.2d 37].) Buyer's rights under the agreement of September 8, 1956, gave her 30 days to put the balance of the purchase price into escrow. Her failure to do this constituted default on her part. Therefore she recorded both of these documents when she herself was in default. Evidence showing that buyer recorded a document containing false accusations against seller, while buyer herself was in default, is sufficient to imply malice.

The record also reveals that buyer had worked in law offices for many years. She testified that she was experienced in legal matters and in real estate transactions. During the course of

this transaction she stated that she intended to sue seller if seller did not agree to her demands; that seller's property would be tied up in litigation; and that the alleged irregularities in the transaction would be taken before the real estate board. Letters written by buyer to seller during this period were replete with intemperate statements, unfounded accusations and abusive language. ■■■ Accusations made without foundation are indicative of malice. ■■■ Knowledge of the fact that recording of a document would cloud the title supports a recovery for slander of title if the allegations in the document are untrue. (*Coley* v. *Hecker,* 206 Cal. 22, 29 [272 P. 1045].)

## WAS ATTORNEY'S FEE TO CLEAR TITLE A PROPER ELEMENT OF DAMAGE?

■■■ Finally the buyer claims that the evidence does not support the damages awarded to seller in this case. Certainly no attack can be sustained as to the $1,000 labeled general damages in the court's findings. The admitted elements of damage total $1,085. The court did not award exemplary damages. But vigorous claim is made that the court is without power to award attorney's fees in cases such as this. Appellant overlooks the fact that the judgment in this case awards damages in the sum of $1,500. In the findings the court segregated the nature of the damages as ". . . One Thousand Dollars ($1,000.00) as general damages, together with additional sum of Five Hundred Dollars ($500.00) as attorney's fees necessarily incurred in quieting title to the above property, or total damages in the sum of One Thousand Five Hundred Dollars ($1,500.00)." Therefore this is not a case where the court is awarding attorney's fees to a litigant in prosecuting a slander of title suit. Rather it is allowing as an element of damages therein the cost of removing from the title the cloud wrongfully placed thereon.

The measure of damages in a slander of title suit is controlled by section 3333 of the Civil Code. It provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Certainly the quieting of title in order to remove the cloud placed upon real property by slanderous conduct is a procedure proximately caused by the slanderer.

In suits to recover damages for malicious prosecution, sums expended by plaintiff to defend the original unfounded lawsuit are recoverable. There, attorney's fees paid or incurred in defending the original suit are held to be a proper element of damages. (*Peebler* v. *Olds,* 71 Cal.App.2d 382, 389 [162 P. 2d 953]; *Stevens* v. *Chisholm,* 179 Cal. 557, 564 [178 P. 128].)

 ▮ Actions for slander of title are analogous to malicious prosecution suits. Both are torts based on conduct calculated to result in litigation. To clear a slandered title is akin to defending an unfounded lawsuit. Both result in litigation that involves attorneys' fees and court costs. ▮ Attorney's fees necessarily paid therein are special damages. Seller pleaded them as such in her cross-complaint and the court awarded them to her.

 ▮ In the case at bar, seller elected by her cross-complaint to join a cause of action to quiet title, for the purpose of removing the cloud caused by buyer, with a cause of action in tort for slander of title. This should make no difference in the result. Seller's cross-complaint alleged that the attorney's fees necessary to clear title amounted to $500. Evidence was introduced to the effect that seller had agreed to pay $1,000 attorney's fees for the prosecution of this lawsuit. The court reasonably concluded that one-half of this fee was incurred in that part of the case wherein title was being quieted, and therefore allowed $500 as special damages for seller's loss in this regard.

Affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.