611 P.2d 1119

**DEN–GAR ENTERPRISES, a limited partnership, Plaintiff-Appellant,**

v.

**Bennie C. ROMERO and Jose Ben Romero, Defendant-Appellees.**

No. 3771.

Court of Appeals of New Mexico.

Jan. 29, 1980.

Writ of Certiorari Denied Feb. 26, 1980.

**427**

William A. Sawtell, Catron, Catron & Sawtell, Santa Fe, for plaintiff-appellant.

J. E. Gallegos, Peter V. Culbert, Jones, Gallegos, Snead & Wertheim, Santa Fe, for defendants-appellees.

1. Den-Gar Enterprises is a Limited Partnership in which Dennis Garcia is the general partner and family members are limited partners. Throughout this opinion references to Den-Gar are to the acts of Dennis Garcia as agent for and general partner of Den-Gar Enterprises.

OPINION

ANDREWS, Judge.

The plaintiffs sued to quiet title to land claimed by them and Den-Gar,[1] and to recover damages for slander of title. Den-Gar counterclaimed for quiet title. The district court, sitting without a jury, ruled in favor of plaintiffs.

In its appeal Den-Gar raises three main issues:

1. Is review of the trial court's denial of defendant's Rule 41(b) motion permitted where defendant, after denial of the motion, elected to present evidence on his own behalf?

2. Is there substantial, admissible evidence in the record to support the trial court's decision?

3. Are the attorney's fees incurred in the prosecution of a quiet title action a proper element of damages for "slander of title"?

This case involves a dispute regarding the ownership of three tracts of land near El Rito, New Mexico. The land was owned originally by the parents of Leo Romero, who deeded the land to their son. In 1964, Leo Romero's father died. Romero, concerned that his mother had no financial security, deeded the land back to her the following year. She took the deed and placed it with her personal papers, but failed to record it.

In 1972, Leo Romero executed a deed for the same land to Den-Gar Enterprises. Garcia kept the deed in his own files and did not record it during Romero's lifetime. Leo Romero and his mother were killed simultaneously in an automobile accident in 1973. Both died intestate, and the plaintiffs in this action, the Romeros,[2] took the land as if it were included in either estate.

2. Plaintiffs are Bennie C. Romero, the widow of Leo Romero, and her brother-in-law, Jose Ben Romero, Carolina's son.

Both the Romero deed and the Den-Gar deed were recorded on the same day in late 1973.

■ Initially, we note that defendant complains of the trial court's denial of its motion to dismiss at the close of plaintiffs' case. Where a defendant makes a motion to dismiss under Rule 41(b), N.M.R.Civ.P., at the close of plaintiff's case and it is denied, he has two courses of action. He may stand on his motion and appeal directly from the order of denial, *United States v. Doyle*, 468 F.2d 633 (10th Cir. 1972), *Wealden Corporation v. Schwey*, 482 F.2d 550 (5th Cir. 1973), or proceed to offer evidence. *Wealdon Corporation v. Schwey, supra.* If he does proceed, however, he does not have any right to object later that his motion was erroneously denied. *See Doyle, supra; Wealdon, supra, Smith Petroleum Service, Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103 (5th Cir. 1970); 5 Moore's Federal Practice ¶ 41.13[1] at 41–178 and 41–179 (1978). In this case defendant, after its motion was denied, proceeded to present its own case. By doing so, defendant has waived any right to claim as error the denial of its motion to dismiss. *Compare State v. Lard*, 86 N.M. 71, 519 P.2d 307 (Ct.App. 1974).

At trial, Den-Gar sought to establish that its title is superior to that of the Romeros for one of two reasons; either the deed to Carolina Romero was ineffective because it was not executed with the requisite intent; or the deed to Carolina Romero was ineffective because Den-Gar, as a bona fide purchaser for value, was protected from the effect of the unrecorded deed by the Recording Act.

■ It was plaintiffs' main contention below that, regardless of which of the two ways they acquired title, through the deed to Carolina Romero or through intestate succession, their title was valid and that defendant Den-Gar had no valid claim of title because its deed had been obtained fraudulently and by deception, and had not been legally delivered. To quiet their title, plaintiffs were required to recover on the strength of their own title. *Cubero Land*

*Grant v. DeSoto*, 76 N.M. 490, 416 P.2d 155 (1966). The trial court found that Leo Romero's 1965 deed to his mother conveyed the real estate involved in this case. Substantial evidence supports this finding. Thus, in relation to the decision concerning the Den-Gar deed, title could properly be quieted in plaintiffs.

As to whether there is substantial admissible evidence in the record to support the trial court's decision, generally, defendant attacks findings and conclusions relating to constructive fraud on the part of Den-Gar and conditional delivery of the Den-Gar deed. It is not necessary for us to reach these questions, in view of the fact that, contrary to defendant's contention, the trial court found that the Den-Gar deed was not effective as a conveyance. "It was not given by the grantor with the intent that it should presently pass the title to the subject property from him to Den-Gar Enterprises."

■ For a deed to be valid, there must be legal delivery of it, not mere physical delivery. *Martinez v. Archuleta*, 64 N.M. 196, 326 P.2d 1082 (1958). There is no legal delivery, even where a deed has been physically transferred, when the evidence shows that there was no present intent on the part of the grantor to divest himself of title to the land. *Id.* The intention of the parties, particularly the grantor, is an essential and controlling factor in determining whether there has been valid legal delivery. *Waters v. Blocksom*, 57 N.M. 368, 258 P.2d 1135 (1953). A deed will not be regarded as delivered while anything remains to be done by the parties who propose to deliver it. *Nosker v. Western Farm Bureau Mut. Ins. Co.*, 81 N.M. 300, 466 P.2d 866 (1970). This is because the grantor's present intent must be to pass his complete title to the grantee and divest himself of all title; otherwise the purported deed is not valid or effective. *Williams v. Pacific Royalty Co.*, 247 F.2d 672 (10th Cir. 1957). It must appear that the grantor intended to part with control and dominion over the land irretrievably. *Waters, supra.* There must be no reservation made by the grantor nor any

suggestion of recalling the deed. *Williams, supra.*

The evidence in this case supports the finding that Leo Romero did not intend to divest himself of title when he gave the Den-Gar deed to Garcia. Leo Romero had previously deeded the property to his mother. After the date of the Den-Gar deed, a permissible inference from the evidence is: (1) that Leo Romero considered that he had leased the property to Garcia, and; (2) that Garcia claimed he had acquired the property through nonpayment of a mortgage loan that Garcia made to Romero. After the date of the Den-Gar deed, Romero negotiated with several persons about sale of the property. One person who negotiated with Romero informed Garcia of the negotiations. Garcia told this person that he was interested in trading for the property if the person bought it from Leo Romero. On the day the Den-Gar deed is dated, Leo Romero and Garcia met with a Forest Service representative for a special use permit. No indication was given to the Forest Service representative that Leo Romero had deeded, or was going to deed, the property to Garcia. Garcia testified that he did not record the Den-Gar deed during Leo Romero's lifetime because he was awaiting a decision between Leo Romero and his brother concerning the land. Garcia never claimed that he owned the land until after Leo Romero died.

 Findings of fact supported by substantial evidence will not be overturned on appeal. *Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977); *Romero v. Garcia,* 89 N.M. 1, 546 P.2d 66 (1976). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and if there is such evidence in the record to support a finding, it will not be disturbed. *Lujan v. Merhege,* 86 N.M. 26, 519 P.2d 122 (1974). Moreover, in examining such evidence an appellate court will view the evidence in a light most favorable to the prevailing party below and will not disturb findings, weigh evidence, resolve conflicts, or substitute its judgment as to the credibility of witnesses where evidence substantially supports the findings of the trial court. *Romero v. Garcia, supra.* The foregoing is substantial evidence that Leo Romero had no present intent to pass title to the defendant when the deed was delivered and that consequently there was no legal delivery of the deed.

 Defendant argues that much of the testimony relative to Leo Romero's intent should have been stricken since it was evidence of acts and conduct subsequent to execution of the deed. This argument has no merit. In New Mexico, in order for a deed to be valid, it must definitely appear that the grantor intended to irretrievably part with control and dominion over the deed and that his "intention may be established from words and actions at time of delivery, or it may be inferred from the circumstances preceding, attending, and *subsequent* to the execution of the deed." (Emphasis added.) *Waters v. Blocksom, supra*; *accord, Schultz v. Young,* 37 N.M. 427, 24 P.2d 276 (1933).

The trial court also found that the deed to Den-Gar was given for either inadequate consideration or for no consideration at all and that the earlier deed to Carolina Romero was valid and was not limited in effect by the recording act. Since the record amply supports the decision of the trial court on the theory discussed above, we find it unnecessary to rule on the correctness of these findings.

 Next, defendants attack the court's award of damages for the reason that a "quiet title action may not be joined with a request for damages," citing *Chavez v. Gomez,* 77 N.M. 341, 423 P.2d 31 (1967). *Chavez* states that damages "are not recoverable in a suit to quiet title." However, plaintiffs have not recovered damages under the count to quiet title; the damages were recovered under the slander of title count. Plaintiffs could join those two counts in the same lawsuit. Rule of Civ. Proc. 18(a); *see Rosser v. Rosser,* 42 N.M. 360, 78 P.2d 1110 (1938).

As to the propriety of the award of attorneys' fees in the prosecution of the "slander of title" action, the court found that de-

fendant's deed cast a cloud on plaintiffs' title, that title should be quieted in plaintiffs, that defendant wilfully and in bad faith slandered plaintiffs' title, and that plaintiffs incurred special damages in the precise amount proven to defend against the slander and remove the cloud.

The tort of slander of title occurs when one who, without the privilege to do so, wilfully records or publishes matter which is untrue and disparaging to another's property rights in land, as would lead a reasonable man to foresee that the conduct of a third purchaser might be determined thereby. *See Dowse v. Doris Trust Co.*, 116 Utah 106, 208 P.2d 956 (1949). Malice is an essential ingredient in a claim of slander of title. *City of Hobbs v. Chesport, Limited*, 76 N.M. 609, 417 P.2d 210 (1966). When defendant recorded its deed and made it part of the public records, he thereby asserted title to plaintiffs' lands, a fact which would affect the conduct of a reasonable man wishing to purchase from plaintiffs. The findings of the trial court are supported by substantial evidence.

In a slander of title action, special damages must be shown and the amount thereof must be proven and not merely estimated. *Garver v. Public Service Company of New Mexico*, 77 N.M. 262, 421 P.2d 788 (1966); *Branch v. May*, 89 N.M. 536, 554 P.2d 1297. In a slander of title action the plaintiff must prove actual pecuniary damage, and proof of attorneys' fees and other costs of a quiet title suit to remove the slander are such pecuniary damages. *See Jemez Properties, Inc. v. Lucero*, 94 N.M. 18, 608 P.2d 157 (Ct.App.1979);

*Olsen v. Kidman*, 120 Utah 443, 235 P.2d 510 (1951); Restatement of Torts, Second, § 633, *Cf. Benderach v. Grujicich*, 30 N.M. 331, 233 P. 520 (1929), which adopts a similar rule in the analogous case of malicious prosecution actions. Thus, in a slander of title action, the amount of attorneys' fees incurred to quiet title is not allowed merely as an extra expense of the suit, but is a measure of damages itself. There is substantial evidence in the record as to the amount of pecuniary loss incurred by the plaintiffs to quiet their title due to defendant's slander of their title. The plaintiffs pled and proved the precise amount of these fees and the trial court's award of damages was proper.

Finally, we note that the court properly refused defendant's requested findings of fact Nos. 2, 3, 4, 5 and 6 and conclusion of law No. 4, since they were either not ultimate facts, or contradictory to the facts found by the court. A refusal by the trial court to make findings favorable to an unsuccessful party which would contradict its other findings, cannot be sustained as error. *Waters v. Blocksom, supra.*

The decision of the trial court is therefore affirmed.

IT IS SO ORDERED.

WOOD, C. J., and HENDLEY, J., concur.