**Glenn BASS and Lois Bass,
Plaintiffs and Appellees,**

v.

**PLANNED MANAGEMENT SERVICES, INC., a Utah corporation, George H. Rose; Majestic Meadows, a limited partnership, dba Majestic Meadows Mobile Home Park; Tommy Spilker; Floyd Trimble; and Evelyn Trimble, Defendants and Appellants.**

**No. 19182.**

Supreme Court of Utah.

Aug. 18, 1988.

*and Keeton on the Law of Torts* § 117, at 867   (5th ed. 1984).

Marinus Heymering, Salt Lake City, for plaintiffs and appellees.

Robert C. Fillerup, Orem, for defendants and appellants.

STEWART, Justice:

Defendant Planned Management Services, Inc. (PMS), appeals a judgment against it for trespass, forcible entry, and slander of plaintiffs' title to a mobile home. The judgment against PMS is for the reasonable rental value of the mobile home for ten days and for damages in the amount of $8,000 for slander of title. We affirm the award of damages for trespass and reverse the award of damages for slander of title.

In October, 1976, plaintiffs, the Basses, leased defendants Trimbles' mobile home until October 31, 1978. The agreement included a provision allowing plaintiffs the option to buy the mobile home. This provision operated for the full term of the lease. Plaintiffs moved the mobile home to Majestic Meadows Mobile Home Park, which was managed by defendant PMS. PMS employed Tommy Spilker as the park manager for Majestic Meadows.

Disputes between plaintiffs and defendant Spilker led to service of a notice of termination on May 24, 1978, and the issuance of a writ of restitution on the mobile home site obtained by PMS on August 18, 1978. Also in August, 1978, plaintiffs employed a real estate agent to sell the mobile home. During the summer of 1978, the Trimbles discovered that plaintiffs were in arrears in their payments on the mobile home and engaged an attorney, who, after sending letters to plaintiffs, received a check for the arrearage from plaintiffs. The attorney testified that when he attempted to certify the check, plaintiffs' bank informed him that their account had insufficient funds to pay the check. By mid-October, the Trimbles had traveled to Utah from their home in North Dakota and informed Spilker that they intended to repossess the mobile home if the payments were not made. Plaintiffs remained in the home until sometime around October 4, 1978.

Plaintiffs' real estate agent testified that Spilker discouraged at least one prospective buyer. Spilker testified that he told some prospective buyers that "there were legal problems to straighten out before they purchased [the home]." Plaintiffs produced none of the prospective buyers at trial, and there was no evidence of any lost sales. On October 20, 1978, after plaintiffs had left the home, Spilker changed the locks on the home, after consulting with PMS's attorney, who was aware of the forthcoming repossession.

Plaintiffs failed to exercise their option to purchase by October 31, 1978, the date the contract between plaintiffs and the Trimbles expired, and the Trimbles repossessed the mobile home. The Trimbles authorized Spilker to sell the home and a buyer was found shortly thereafter.

Plaintiffs commenced this action, alleging a conspiracy among the various defendants to dispossess plaintiffs of their mobile home and personal property. Plaintiffs also alleged that defendants had committed an unlawful trespass and made false and malicious statements concerning the title to the mobile home. Defendants Floyd and

Evelyn Trimble did not respond to the complaint or appear at the trial, and a default was entered against them. Plaintiffs' claim against Spilker was settled for nominal damages of one dollar. During a bench trial, the conspiracy allegation against the various defendants was dismissed because of insufficient evidence.

The trial court entered findings of fact from the bench at the conclusion of the trial and later issued a memorandum opinion. The court ruled that the Trimbles' forfeiture of plaintiffs' interest in the property was wrongful and that PMS was liable under the doctrine of respondeat superior for Spilker's actions. The court found that Spilker made false statements concerning the mobile home and wrongfully changed the locks. The court ruled that PMS was liable for trespass and slander of title. The court also held that the plaintiffs had failed to establish that their failure to sell the property was proximately caused by defendants. The court held PMS liable for $76.70, the reasonable rental value of the mobile home for the ten-day period of the trespass, and for attorney fees for the slander of title in the amount of $8,000. PMS's appeal challenges the trial court's finding of slander of title and trespass.

## I. SLANDER OF TITLE

Even though plaintiffs did not allege slander of title in their complaint, the trial court at the end of the trial ruled, on its own motion, that defendants had committed a slander of title and awarded $8,000 in attorney fees as special damages. Because there is no evidence of an essential element of the cause of action for slander of title, we reverse.

■ A claim for relief for slander of title rests on four elements. First, there must be a publication, either oral or written, of a slanderous statement. A slanderous statement is one that is derogatory or injurious to the legal validity of an owner's title or to

his or her right to sell or hypothecate the property; second, the statement must be false; third, the statement must have been made with malice;[1] and, fourth, the statement must cause actual or special damages to the plaintiff. *See Jack B. Parsons Companies v. Nield,* 751 P.2d 1131, 1134 (Utah 1988); *Dowse v. Doris Trust Co.,* 116 Utah 106, 110–11, 208 P.2d 956, 958 (1949). *See also McNichols v. Conejos–K Corp.,* 29 Colo.App. 205, 209, 482 P.2d 432, 434 (1971); *Cardon v. McConnell,* 120 N.C. 461, 27 S.E. 109 (1897). *See generally* 50 Am.Jur.2d *Libel and Slander* § 541 (1970).

■ Use of the term "slander" in the name of the action for slander of title has led to analogies between actions for defamation and actions for slander of title. *See, e.g., Woodard v. Pacific Fruit & Produce Co.,* 165 Or. 250, 253–54, 106 P.2d 1043, 1044 (1940). However, despite the similarity in the names of the torts, there is a basic distinction between the two. They protect separate and unrelated interests. The tort of slander of title and the related tort of disparagement of property are based on an intentional interference with economic relations. They are not personal torts; unlike slander of the person, they do not protect a person's reputation. Slander of title actions are based only on palpable economic injury and require a plaintiff to prove special damages, whereas injury to personal reputation may be based on both tangible and intangible losses and give rise to presumed and general damages. There are no general or presumed damages in slander of title actions. Special damages are ordinarily proved in a slander of title action by evidence of a lost sale or the loss of some other pecuniary advantage. Absent a specific monetary loss flowing from a slander affecting the saleability or use of the property, there is no damage. *See Western States Title Ins. Co. v. Warnock,* 18 Utah 2d 70, 415 P.2d 316 (1966); *Den-*

---

1. We forego defining the term "malice" in this opinion. We note, however, that the concept is not altogether clear under Utah law. *See Timpanogos Highlands, Inc. v. Harper,* 544 P.2d 481, 486 (Utah 1975); *Direct Import Buyer's Ass'n v. KSL, Inc.,* 538 P.2d 1040, 1042 (Utah 1975);

*Howarth v. Ostergaard,* 30 Utah 2d 183, 185, 515 P.2d 442, 444 (1973); *Birch v. Fuller,* 9 Utah 2d 79, 80, 337 P.2d 964 (1959); *Dowse v. Doris Trust Co.,* 116 Utah 106, 110–11, 208 P.2d 956, 958 (1949). *See generally Cox v. Hatch,* 761 P.2d 556 (1988).

*Gar Enter. v. Romero,* 94 N.M. 425, 430, 611 P.2d 1119, 1124 (Ct.App.1980). *See generally* Annotation, *What Constitutes Special Damages in Action for Slander of Title,* 4 A.L.R.4th 532 (1981); W. Keeton, *Prosser and Keeton on the Law of Torts,* § 128, at 970 (5th ed. 1984).

Attorney fees have been held to be recoverable as special damages if incurred to remove a cloud placed by the defendant on the title. *See Dowse v. Doris Trust,* 116 Utah at 111–12, 208 P.2d at 958–59. *Accord, Misco Leasing, Inc. v. Keller,* 490 F.2d 545, 549 (10th Cir.1974); *Contra Costa County Title Co. v. Waloff,* 184 Cal. App.2d 59, 7 Cal.Rptr. 358 (1960). In this case, the trial court awarded plaintiffs $8,000 for attorney fees as special damages. The trial court found, however, that the plaintiffs had not proven the loss of a sale, stating:

> Plaintiffs failed to establish with the required degree of certainty that their failure to sell the property and obtain the profit therefrom was proximately caused by the defendants' actions, and therefore no damages can be awarded to compensate them for a lost sale.

■ Therefore, the attorney fees awarded were not incurred to remove a cloud from plaintiffs' title. Because the plaintiffs had already voluntarily relinquished possession of the leased mobile home and the lease had expired by the time this action was brought, plaintiffs' possessory or inchoate ownership rights could not have been damaged. Since plaintiffs' attorney fees were not incurred to clear title or to undo any harm created by whatever slander of title occurred, there were no special damages, and the award of attorney fees was gratuitous. In short, the elements of a slander of title cause of action were not made out.

## II. TRESPASS

■ PMS also contends that the trial court erred in awarding damages for trespass. PMS concedes that Spilker changed the locks on the mobile home shortly after plaintiffs moved out but before their lease expired. However, PMS asserts that no one was actually denied access to the home or made any demand to enter the home after the locks were changed. These assertions ignore the facts that (1) the changing of the locks forced the real estate agent to climb through a window to gain access to the mobile home, and (2) the Basses were denied access to the park on at least one occasion. Despite the fact that no formal request for access to the home was ever received by PMS, access was nonetheless denied. Furthermore, a person should not have to demand access to a home which he or she is entitled to possess. Since plaintiffs were entitled to possession of the mobile home until October 31, 1978, the trespassory acts of PMS's agent resulted in plaintiffs' dispossession for ten days. Under the circumstances, the trial judge's award of damages based on the rental value of the mobile home for the ten days was proper. *See Mortensen v. LeVevre,* 674 P.2d 134 (Utah 1983); *Slovek v. Bd. of County Comm'rs,* 697 P.2d 781, 783 (Colo. Ct.App.1984), *aff'd,* 723 P.2d 1309 (Colo. 1986); *Pearl v. Pic Walsh Freight Co.,* 112 Ohio App. 11, 15, 168 N.E.2d 571, 573 (1960).

Reversed with respect to the slander of title and affirmed with respect to the trespass. Each side to bear its own costs.

HALL, C.J., HOWE, Associate C.J., ZIMMERMAN, J., and REGNAL W. GARFF, Judge, concur.

DURHAM, J., having disqualified herself, does not participate herein; GARFF, Court of Appeals Judge, sat.