FILED
United States Court of Appeals
Tenth Circuit

April 29, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NOVELL, INC., a Delaware
corporation,

Plaintiff - Appellant,

v.

VIGILANT INSURANCE
COMPANY, a New York corporation,

Defendant - Appellee.

No. 10-4102
(D.C. No. 2:09-CV-00496-TS)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

Plaintiff-Appellant Novell, Inc. ("Novell") appeals from the district court's

grant of summary judgment in favor of Defendant-Appellee Vigilant Insurance

Company ("Vigilant"). Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Background

On January 20, 2004, SCO Group ("SCO") sued Novell in state court in Utah, alleging a single cause of action—slander of title. Aplt. App. at 332-42. Novell removed that action to federal court. Id. at 14. SCO filed an amended complaint on July 9, 2004, and a second amended complaint on February 3, 2006, adding additional claims. Id. at 334; Aplee. Supp. App. at 508. Both amended complaints contained the claim for slander of title. In its complaints, SCO alleged that it had acquired from Novell all right, title, and interest in and to the UNIX and UnixWare (collectively, "Unix") business, operating system, source code, and all copyrights on September 19, 1995, pursuant to an Asset Purchase Agreement ("Agreement"), and that Novell attempted to interfere with SCO's rights to Unix technologies by filing for copyright protection in its own name and by claiming publically that it, and not SCO, owned the Unix copyrights. Aplt. App. at 333.

Specifically, in its original complaint, SCO alleged the following:

- "Novell has made such statements with the intent to cause customers and potential customers of SCO to not do business with SCO and to slander and impugn the ownership rights of SCO in [Unix], and to attempt, in bad faith, to block SCO's ability to enforce its copyrights therein." Id. at 334.

- "Novell's false and misleading representations that it owns the [Unix] copyrights has caused and is continuing to cause SCO to incur significant

- 2 -

irreparable harm to its valuable [Unix] copyrights, to its business, and its reputation." Id.

- "Novell, with full knowledge of SCO's exclusive ownership of the copyrights related to [UNIX], has embarked on a malicious campaign to damage SCO's ability to protect its valuable copyrights in [UNIX]." Id. at 336.

- "Novell has slandered SCO's title and rights to its [Unix] copyrights and damaged SCO's business reputation and relationships with potential customers by making false oaths of ownership to public officials, and by repeatedly representing both to the public in general and directly to several of SCO's customers and potential customers that Novell, and not SCO, owns the [Unix] copyrights." Id. at 340.

- "Novell's conduct as alleged herein was intentionally and maliciously designed to destroy SCO's valuable rights to the [UNIX] copyrights and further destroy SCO's business livelihood." Id. at 341.

SCO alleged that Novell made several public statements concerning the Unix copyrights, including, "SCO is not the owner of the Unix copyrights," SCO's claims of ownership were "absurd" and "insubstantial," and Novell "retains all or substantially all of the ownership of the copyrights in Unix." Id. at 337-39.

Novell requested that Vigilant defend Novell in the SCO action pursuant to

a general liability insurance contract ("Policy") between the two parties. See id. at 357. The relevant portion of the Policy required Vigilant to pay for any "personal injury" under the Policy that Novell became legally obligated to pay. Id. at 208. "Personal injury" included, among other things, "electronic, oral, written or other publication of material that libels or slanders a person or organization (which does not include disparagement of goods, products, property or services)." Id. at 235. The Policy also contained an "Intellectual Property Laws or Rights" exclusion ("IP Exclusion") and an "Expected or Intended Injury" exclusion. Id. at 219, 222.

Vigilant denied a defense on February 11, 2004, informing Novell via letter that it did not have a duty to defend because the allegations in SCO's complaint would not constitute personal injury. Id. at 357-58. The letter also cited the IP Exclusion and Expected or Intended Injury Exclusion as reasons for denying coverage. Id. at 361, 368-69.

Novell filed this diversity action against Vigilant on May 29, 2009, seeking declaratory relief that Vigilant had a duty to defend against SCO's claims. Id. at 9-20. Both parties sought summary judgment. Id. at 29-64, 74-112. The district court granted summary judgment in favor of Vigilant, concluding that SCO's complaint did not allege any conduct that would come within the definition of personal injury under the Policy. Novell, Inc. v. Vigilant Ins. Co., No. 2:09-CV-496 TS, 2010 WL 1734771, at *8 (D. Utah Apr. 27, 2010). The court explained

that the allegations showed a business dispute concerning copyright ownership but that the complaint did not allege facts that would potentially support a claim for libel or slander; thus, Vigilant did not have a duty to defend. Id. Because of this holding, the court did not address whether either of the exclusions in the Policy applied. Id. Novell appeals, arguing that SCO alleged facts that would potentially support a claim for defamation and that no exclusion in the policy bars coverage. Aplt. Br. at 7.

## Discussion

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011) (citation omitted). We view the evidence and its reasonable inferences in the light most favorable to the non-movant. Id. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of America, NA, 477 F.3d 1171, 1179 (10th Cir. 2007) (citation omitted). Under Utah law, "[t]he duty to defend is broader than the duty to indemnify, but the insurer's obligation is not unlimited." Deseret Fed. Savs. & Loan Ass'n v.

U.S. Fid. & Guar. Co., 714 P.2d 1143, 1146 (Utah 1986). "[T]he duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy." Id. (citation omitted). "The question is whether the allegations, if proved, could result in liability under the policy. . . . Where there is no potential liability, there is no duty to defend." Id. at 1147 (citations omitted). As a general rule, Utah courts "determine the scope of an insurer's duty to defend by comparing the language of the insurance policy with the allegations of the complaint." Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1171 (10th Cir. 2010) (internal quotation marks and citation omitted).

Both parties agree that Vigilant does not have a duty to defend SCO's claim for slander of title because defense of slander of title claims is expressly excluded under the policy. Novell contends, however, that SCO alleged facts that implicitly assert a claim for defamation, which is covered under the Policy. Aplt. Br. at 20-31. Specifically, Novell argues that the alleged statements about ownership of the UNIX copyrights could give rise to a potential cause of action for defamation because they called into question SCO's honesty and significantly harmed SCO's business reputation. Id. at 2, 8-9.

Under Utah law, both libel and slander are types of defamation. Libel is "a malicious defamation, expressed either by printing or by signs or pictures or the like, tending to . . . impeach the honesty, integrity, virtue or reputation, or publish

- 6 -

the natural defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule." Utah Code Ann. § 45-2-2(1). Slander is "libel communicated by spoken words." Id. § 45-2-2(2). Slander of title, however, is distinct from these categories falling within the definition of defamation.

The Utah Supreme Court has explained that slander of title and defamation are different torts that "protect separate and unrelated interests." Bass v. Planned Mgmt. Servs., Inc., 761 P.2d 566, 568 (Utah 1988). Specifically, "slander of title and the related tort of disparagement of property are based on an intentional interference with economic relations. They are not personal torts; unlike slander of the person, they do not protect a person's reputation. Slander of title actions are based only on palpable economic injury . . . ." Id.

After reviewing SCO's allegations, we agree with the district court that the SCO complaint does not allege facts that would potentially support a claim for defamation. SCO did not allege that Novell made any statements impeaching SCO's honesty, integrity, virtue, or reputation, thereby exposing SCO to public hatred, contempt, or ridicule. Novell's contention that the allegations in the complaint can be read to imply that Novell called SCO a liar (or dishonest) is just too great a stretch. See Aplt. Br. at 2 (citing Aplt. App. at 337, 339); Aplt. Reply Br. at 1-2. The SCO complaint does not allege that Novell called SCO a liar or dishonest; rather it alleges statements surrounding the ownership dispute over the Unix copyrights. Aplt. App. at 337-338. The fact that the complaint alleges

injury to SCO's business reputation, in the absence of allegations that Novell made defamatory statements about SCO, does not change our ruling. As the district court noted, any injury alleged by SCO to its business reputation was caused by the disagreement over the ownership of the Unix copyrights and any cloud placed upon the title of those copyrights—which prevented SCO from being able to fully exploit the resources it claimed to own. See Novell, Inc., 2010 WL 1734771, at *6. SCO did not allege, however, that the injury to its reputation was caused by any defamatory statement made by Novell.

The cases cited by Novell are distinguishable. In Nvidia Corporation v. Federal Insurance Company, No. 04 C 7178, 2005 WL 2230190 (N.D. Ill. Sept. 6, 2005), the underlying complaint alleged that Nvidia falsely communicated to clients that another company was "selling pirated or unlicensed goods" and that Nvidia "engaged in a campaign to publicly sabotage, disparage and destroy [the other company]," which caused "irreparable damage to [the company's] reputation and ability to conduct business." Id. at *8. The court concluded that these allegations contained a potential claim for defamation and thus triggered the duty to defend. Id. at *8. Unlike the complaint in Nvidia, however, the allegations in SCO's slander of title claim do not include allegations of infringement. See id. at *12. In addition, the SCO complaint alleges that Novell "embarked on a malicious campaign to damage SCO's ability to protect its valuable copyrights in [Unix]," not a campaign to destroy SCO itself. Aplt. App.

at 336.  Though we are not bound by <u>Nvidia</u> and express no opinion on it, the allegations therein clearly went beyond merely an ownership dispute concerning copyrights.  Similarly, <u>Aurafin-Oroamerica, LLC v. Federal Insurance Company</u>, 188 F. App'x 589 (9th Cir. 2007) (unpublished) and <u>Amerisure Insurance Company v. Laserage Technology Corporation</u>, 2 F. Supp. 2d 296 (W.D.N.Y. 1998), concerned defamation coverage triggered by complaints alleging patent infringement.

In <u>Lime Tree Village Community Club Association, Inc. v. State Farm General Insurance Co.</u>, 980 F.2d 1402, 1406 (11th Cir. 1993), the underlying complaint alleged that the insured slandered or disparaged title to property by declaring to third parties that the underlying plaintiffs had no right to sell or lease their properties to certain individuals.  The court concluded that there was a duty to defend because the allegations claimed damages for personal injury due to the publication of a slander.  <u>Id.</u> at 1406-07, 1406 n.3.  The court did not, however, explain whether the allegations supported a claim of defamation or slander of title—both of which were covered under the policy—and thus, the case is not dispositive here.  In addition, in <u>Winokur, Winokur, Serkey & Rosenberg, PC v. Commerce Insurance Company</u>, No. 0100300, 2004 WL 1588259 (Mass. Super. May 21, 2004) (unpublished), there was no discussion of whether the statements triggering the duty to defend supported a claim of defamation or disparagement, both of which were covered in that case.

Other cases cited by Novell address whether an insurer has a duty to defend against an implied claim of product disparagement—a separate claim from defamation—where the insurance policy expressly covers the tort of disparagement. See, e.g., Bankwest v. Fid. & Deposit Co. of Md., 63 F.3d 974, 980-81 (10 th Cir. 1995). Novell's reliance on Atlantic Mutual Insurance Company v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1035 n.13 (2002), is also misplaced, as the court expressly stated that "[b]ecause we find that the alleged statements by the [insured] constituted disparagement, we need not consider or discuss their possible defamatory character."

Novell's remaining arguments are not persuasive. It argues that the district court's references to "allegedly slanderous statements" in two orders in the underlying action implicitly acknowledge potential coverage for defamation. Aplt. Br. at 3-4. The district court's reference to "slanderous statements" in the underlying orders, however, referred to slanderous statements in the context of its "slander of title" analysis and did not consider whether the slanderous statements were defamatory. SCO Group, Inc. v. Novell, Inc., No. 2:04-CV-139, 2010 WL 1170509 (D. Utah Mar. 25, 2010); SCO Group, Inc. v. Novell, Inc., No. 2:04-CV-139, 2010 WL 1290814 (D. Utah Mar. 26, 2010). "A slanderous statement [in the slander of title context] is one that is derogatory or injurious to the legal validity of an owner's title or to his or her right to sell or hypothecate the property" and is distinct from a defamatory slanderous statement. Bass, 761

P.2d at 567.

In addition, Novell's argument that the district court applied a Fed. R. Civ. P. 12(b)(6) plausibility standard instead of a potentiality standard is without merit. Aplt. Br. at 19-20, 43-44. The district court never discussed plausibility; rather it looked to SCO's complaint and concluded that it did not allege any facts that would potentially support a claim for defamation.

Because we hold that the slander of title claims in the SCO complaints did not raise a potential cause of action for defamation, we need not address whether either of the exclusions in the Policy apply.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge