[Sac. No. 3992. In Bank.—December 26, 1928.]

J. A. COLEY, Respondent, v. BARBARA HECKER et al., Appellants.

Dean Cunha for Appellants.

McNoble & Arndt, George F. McNoble and Stanley M. Arndt for Respondent.

THE COURT.—A hearing in bank was ordered in this cause after a decision thereof by department one of this court. Upon a further consideration of the cause upon such hearing we are satisfied with the decision of the department, and hereby adopt the same as the decision of the court in bank. Said decision reads as follows:

"This appeal is from an order denying the demand of appellants for the change of the place of trial from the county of San Joaquin, in which county the action was commenced, to the place of the residence of the respective appellants, to-wit, the city and county of San Francisco. It is the contention of respondent that the action is one to remove a cloud upon his real property and for the determination of an interest in said real property situate in said county of San Joaquin and that the venue is, under the provisions of section 392, Code of Civil Procedure, where said real property is situated.

"The only papers offered upon the hearing in support of the motion were the complaint and the demurrers of the respective appellants, general and special.

"In considering the appeal the allegations of the complaint must be taken as true. The allegations of the complaint are to the effect that respondent was the owner of a large number of lots, pieces and parcels of land situate in said county of San Joaquin; that on May 18, 1925, and while he was and continued to be such owner, one Barbara Hecker recovered in the superior court of the city and county of San Francisco a judgment in the sum of $12,925.73 and costs against him and his co-surety, J. L. Craig, upon an appeal bond jointly executed by them with one Walter F. Hogan, as principal. On May 19, 1925, respondent and said Craig took an appeal from said judgment by filing in the office of the county clerk of the city and county of San Francisco a notice of appeal and entering into a written undertaking on appeal in the sum of $26,000 to stay the execution of said judgment, with two sureties, and on said day notified appellants herein that said undertaking had been filed. On May 21, 1925, said appellants served upon respondent, J. A. Coley, and his co-surety, J. L. Craig, notice of exception to said sureties. Five days thereafter, to-wit, May 26, 1925, said respondent, Coley, and Craig served upon appellants notice of justification of sureties and filed said notice on the same day in the office of the county clerk of said city and county of San Francisco. The time therein fixed for justification was May 28, 1925. On the date last above mentioned one of the original sureties and a third person, who was substituted in place of the other original surety, appeared and justified before a judge of the superior court of said city and county of San Francisco upon a written undertaking as required by law in the sum of $300 for costs and in more than double the amount named in said judgment, to-wit, the sum of $26,000. Said undertaking was then and there, in the presence of Harry I. Stafford, the agent and attorney for appellants, regularly approved by said judge of the superior court. Said appellants were, on said May 28, 1925, regularly notified that said undertaking staying execution had been filed and that said sureties had justified and that said bond had been approved by said judge of the superior court.

"It is next alleged that on the day following the filing of said stay bond, to-wit, May 29, 1925, appellants, acting maliciously and with the evil purpose of vexing and annoying respondent and slandering the title to all lands owned by him in the county of San Joaquin and clouding the title thereto, recorded in the office of the county recorder of San Joaquin county an abstract of judgment in said action, well knowing that said abstract of judgment was inoperative and of no legal effect by reason of the filing of said undertaking in said city and county of San Francisco and that said appellants well knew said abstract of judgment when filed by them would be a cloud upon and a slander against all the lands owned, or which might thereafter be owned, by respondent situate in said county of San Joaquin. It is further alleged that the recordation of said abstract of judgment decreased the value of said real property and rendered it unmarketable to the damage of respondent in the sum of $26,000.

"As an additional damage respondent alleged that appellants in recording said abstract of judgment were moved by malice and a desire to oppress him and as a penalty therefor he prayed for punitive and exemplary damages in the sum of $25,000. The prayer of the complaint is that appellants be required to set forth the nature of their claims; that it be decreed and adjudged that appellants have no interest or estate in said lands situate in San Joaquin county and that respondent's title be decreed to be valid in all respects; that appellants be enjoined from asserting any title thereto adverse to respondent; that the recordation of said abstract of judgment recorded in the county of San Joaquin be cancelled and declared null and void, and for general relief.

"The first and principal point presented by appellants is that respondent having joined a real and personal action, to-wit, an action to quiet title to real property with an action to recover for a slander of title did thereby lose his right to hold the case in the county where the real property was situate. This contention is based upon the claim that an action for the recovery of damages for slander of title sounds in personal action and does not bring the venue within the purview of section 392, Code of Civil Procedure. Said section provides:

" 'Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial, as provided in this code.

" '1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for the injuries to real property. . . .

" '3. For the foreclosures of all liens and mortgages on real property.'

"We think the language of the section clearly justifies the construction that the owner of the slandered title is given the right to bring and maintain the action in the county where the real property is situated upon the theory that the action is one in which the determination of the owner's right or interest therein is properly adjudicated, and for the additional reason that slander of title is an injury to real property. It is difficult to discern a single consideration which may be assigned as the legislative reason for the adoption of the code section as to the venue of actions affecting the ownership of an interest in real property that may not with equal force be applied to actions to recover damages for injury for the false and malicious disparagement of the owner's title by another, a wrong which has by use become a recognized phase of the law known as 'slander of title.' By the filing of the abstract of judgment duly certified by the county clerk of the city and county of San Francisco, said judgment became a lien upon all the real property of the respondent not exempt from execution situate in said county of San Joaquin (section 674, Code of Civil Procedure). The enforcement of the judgment had been stayed by the giving of an undertaking on appeal prior to the time said abstract of judgment was filed by appellants, a fact, according to the allegations of the complaint, well known to them, and which was not stated in said abstract of judgment. *Prima facie* a lien exceeding the sum of $26,000 at once fastened itself upon respondent's San Joaquin County real property. As another ground supporting the intention of the legislature to cover by said section 392, *supra,* and fix the venue of all actions wherein title to real property may be affected, it is provided that an action to foreclose liens upon real property must be tried in the county in which the real

property is situate. To remove the lien, which constitutes the essence of the injury complained against, the venue of the action would necessarily be in the county in which the real property affected thereby is situate.

■ "Damages for injury to the real property are but an incident to the action to remove the cloud wrongfully cast upon respondents' real property by the filing of said abstract of judgment. It is the proximate result of an alleged wrongful act. The fact that damages are demanded for maliciously doing an act from which an injury is the necessary consequence does not split the action into two separate causes of action merely because dual relief may be properly or improperly sought. And this is especially true where the cause of action sounds in trespass. (*Gomez* v. *Reed et al.*, 178 Cal. 759 [174 Pac. 658].)

"The phrase 'slander of title' is a figure of speech in which the title is personified. In the instant case the phrase seems to be an anomaly as applied to a situation which, strictly speaking, is a libel upon the title, inasmuch as the damage was accomplished by the recordation of a written document and no spoken words were uttered. ■ However, the term 'slander of title' includes both spoken and written means by which the right of property may be invaded, and a right of action exists irrespective of the means by which the title is traduced. This is so because a property right had been invaded—an injury to real property has been sustained. 'Persons may have a right in or to a thing —right of property—and this right may be invaded by language concerning the thing. When this invasion occurs the language which affects a thing is actionable.' (*Edwards* v. *Burris*, 60 Cal. 157, and authorities cited; *Fearon* v. *Fodera et al.*, 169 Cal. 370 [Ann. Cas. 1916D, 312, 148 Pac. 200].)

■ "It is appellants' contention that by the term 'injury to property,' as used in section 392, *supra,* it was intended to include only physical interference with, or physical injury to real property, such as waste, or some sort of physical trespass committed upon the lands, and that the term was not intended to be as broadly applied as its meaning would seem to imply. In addition to the construction which we feel constrained to place upon said section, and

which is supported by the construction given to practically the same language by the supreme court of Louisiana in *Labarre* v. *Burton-Swartz etc. Co.*, 126 La. 982 [53 South. 113], to the effect that slander of title is an actual intrusion upon one's property and is in the 'nature of a trespass, a real action to protect property,' our conclusion is further fortified by eminent authority holding that a libel written or published in disparagement of title is in the nature of an action of trespass on the case. 'The term "injury to real property" is in itself a wider and less technical term than "trespass to real property." As applied to questions of venue, it has been declared to embrace every wrong which in legal contemplation is an injury to real property, not only the direct and forcible injury, but consequential injuries, and threatened injuries to land, and even a mere nonfeasance, as permissive waste.' (40 Cyc. 74; 17 R. C. L. 454.)

"The trend of the decisions of this court is generally in accord with the doctrine, whenever the question has come before it, that trespasses may be committed by consequential and indirect injuries as well as by direct and forcible injuries. Applicants cite *Monk* v. *Ehret*, 192 Cal. 186 [219 Pac. 452], as a case supporting by analogy the view that the term 'injuries to real property' should be interpreted as affecting a physical injury to real property only. *Monk* v. *Ehret* has to do largely with 'injuries to person' considered with reference to a code amendment adopted to meet a situation brought about by the increasing use of motor vehicles, as in said case pointed out, and was intended to apply to a trespass based upon false imprisonment. We are satisfied that the Monk case is not in conflict or inconsistent with the conclusion reached in the instant case.

"*Burkett* v. *Griffith*, 90 Cal. 532 [25 Am. St. Rep. 151, 13 L. R. A. 707, 27 Pac. 527], liberally quoted from by appellants, cannot be regarded as an authority ruling the facts of the instant case. In *Burkett* v. *Griffith*, *supra*, the slander consisted of false and malicious statements made by the defendant concerning property of the plaintiff. It is therein said that 'in order to show that the words uttered have caused injury to the plaintiff, it is generally necessary to aver and show that they were uttered pending some treaty

or public auction for the sale of the property; and that thereby some intending purchaser was prevented from bidding or competing. . . . If the plaintiff has merely a general intention to sell, or if the words uttered do not reach any intending purchaser, or if they do not prevent any sale . . . the plaintiff does not suffer any damage from their utterance.' There the words were merely spoken and were transitory, but in the instant case the libel was recorded in the office of the county recorder where the land was situate and constituted a continuing, permanent notice to the world that a judgment lien to the extent of $12,000 rested upon respondent's real property. In the instant case the libel or slander was communicated to the entire purchasing public. The allegation of the complaint that the malicious recording of said abstract of judgment, falsely asserting an interest in said property, decreased the value of said real estate and rendered it less marketable, is obviously true.

■ "Appellants further contend that the recording of the abstract of judgment, if it gives rise to any cause of action, is one for malicious abuse of process, and consequently is a personal action, the venue of which is at appellants' place of residence. We think there is no merit in the contention that the facts alleged state an action for the abuse of process rather than slander of title. It was the filing, maliciously and falsely, of a document which clouded the title of respondent that caused the injury. The effect would be the same had said document been a forged deed, rather than an authorized abstract of judgment. In either event no question of abuse of process would be involved."

The order is affirmed.