**Bernard KIRSCH, Appellant,**

v.

**George BARNES, Milton L. Huber, G. Edward Goodwin, Milton L. Huber & G. Edward Goodwin, A Copartnership Doing Business as Huber & Goodwin, Appellees.**

**No. 15891.**

United States Court of Appeals
Ninth Circuit.

Feb. 3, 1959.

---

9. Cofield has a sixth-grade education.

David Livingston, Harold R. Farrow, James R. Mansfield, Robert R. Barton, San Francisco, Cal., for appellant.

Hill & Hill, Clayton R. Janssen, Jr., Eureka, Cal.; Philip C. Wilkins, Esther Mix, Sacramento, Cal., for appellees.

Before POPE, ORR and HAMLEY, Circuit Judges.

ORR, Circuit Judge.

An original complaint filed in the district court was held not to state a cause of action. An amended complaint was also held defective in that respect.

In this opinion we do not reach a consideration of the trial court's ruling as to the failure to plead a cause of action for the reason that we find that the action was not seasonably filed.

It is alleged in the amended complaint that prior to October 16, 1952, appellee Barnes acted in a confidential capacity in representing appellant in arranging sales of standing timber belonging to appellant and located in California; that appellees Huber and Goodwin are members of a law firm employed by appellant in connection with the said timber transactions.

On October 16, 1952, the parties entered into a contract concerned with the cutting and marketing of timber to be done under the direction of appellee Barnes, with authorization to appellees Huber and Goodwin to collect the proceeds of any sales and make distribution thereof on a percentage basis. It is agreed that the contract was signed by the parties, but it is alleged that appellant made no acknowledgment of the instrument although a certificate to that effect signed by a notary public was attached thereto.

On or about September 11, 1953, appellant was in the process of negotiating a sale of a portion of timber rights covered by the contract hereinbefore mentioned to the State of California. While said negotiations were in the process of consummation, appellees caused the said contract to be recorded. It is alleged that in order to permit recordation of such an instrument California law requires that the signatures attached thereto be acknowledged by the signing parties. It is further alleged that such a notarial certificate was appended by appellees, but that it was fraudulent in that notary public Murray's certificate was false since appellant had made no such acknowledgment at any time.

It is further alleged that the recordation of the contract with the fraudulent certificate attached placed an apparent and fictitious encumbrance on appellant's timber property.

On July 27, 1954, the State of California deposited escrow warrants in the sum of $287,500 as the sale price of the timber pursuant to an agreement with appellant, but the title insurance company, from whom title insurance was sought, in order to comply with a condition of the sale refused to issue a policy because of the recorded contract. This refusal resulted in a postponement of the sale until June 29, 1956, at which time it was completed. The State withheld the sum of $125,000 to protect it against any claim that might be found due appellees, which said sum was placed in escrow.

This action was filed in the trial court on November 30, 1956. The damages claimed therein are for slander of title. The theory of the alleged cause of action is that the placing of the contract on record which was not entitled to be of record constituted an actionable tort because it so encumbered the property that the sale of it was delayed. The claim for damage is based not on the loss of market value, but on the loss of income from the

use of sales money during the period of delay, and the amount of taxes appellant has been required to pay in the interim.

It is agreed that there is no California decision directly holding as to which of the California statutes of limitation should be applied in a slander of title of real property action. The three Code sections most strongly urged as applicable are Code of Civil Procedure § 338, subd. 2 [1] limiting suits for injuries to real property to 3 years, C.C.P. § 340, subd. 3 [2] limiting suits for libel and slander to 1 year, and C.C.P. § 339, subd. 1 [3] limiting actions of a type not otherwise mentioned to 2 years.

Appellants cite Coley v. Hecker, 1928, 206 Cal. 22, 272 P. 1045 as establishing that an action for slander of title is one involving an injury to real property and therefore falls within the 3 year statute provisions. In Coley v. Hecker the issue presented was the proper venue of the action. The court's resolution of that question was narrowed to two considerations: 1—setting the venue at the place fixed by statute for real actions, or 2—the place fixed for personal actions. It held the venue statute for injuries to real property applied. When considering the applicable statute of limitations in a slander of title action the area to be explored reaches beyond the statutes governing real and personal actions as California has a limitations statute for what may be termed miscellaneous torts and the cases dealing with that statute are more controlling than Coley v. Hecker.

Italiani v. Metro-Goldwyn-Mayer Corp., 1941, 45 Cal.App.2d 464, 114 P.2d 370 was a case involving plagiarism of a movie scenario and the question raised was whether the statute of limitations was a bar to the action. Plaintiffs in that action argued that C.C.P. 338, subd. 3 [4] allowing three years to file an action controlled because it refers to actions for injury to personal property. The court held that the scenario was an intellectual production and that plaintiff's right "is an intangible incorporeal right, and exists separate and apart from the property in the paper on which it is written (45 Cal.App. 2d at page 466, 114 P.2d at page 372)." It thus negated the claim that the personal property itself—the paper on which the scenario was written—was injured and held that the statute relating to injury to personal property did not control and applied section 339, subd. 1 stating its reason as follows:

"there is no doubt that this provision includes the cause of action in the case at bar, unless the latter comes expressly within some other category of limitation. 'Liability,' as used in the section includes responsibility for torts, and 'is applicable to all actions at law not specifically mentioned in other portions of the statute.' * * * (Citing cases) * * * (Emphasis ours.)" (45 Cal.App.2d at page 467, 114 P.2d at page 372).

Appellant in an attempt to differentiate the Italiani case argues that in that case the court was referring to an intellectual production as being incorporeal, whereas here we deal with timber which is not incorporeal. But that argument overlooks the fact that here we deal with title in the timber, not the timber itself, and title is manifestly as incorporeal as the intellectual production. In the Italiani case the interest of the plaintiff in his composition was sought to be protected—

---

1. "* * *

"Within three years:
 * * * * *
"(2) An action for trespass upon or injury to real property."

2. "Within one year:
 * * * * *
"(3) * * * An action for libel, slander, * * *."

3. "* * *

"Within two years. 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, other than mentioned in subdivision two of section three hundred thirty-seven of this code * * *."

4. "Within three years:
 * * * * *
"(3) An action for taking, detaining, or injuring any goods, or chattels * * *."

not the paper itself; here it is the interest in the timber—the ownership interest —that has allegedly been injured, not the timber as a physical object. Cf. Coley v. Hecker, supra wherein the court stated: "the phrase 'slander of title' is a figure of speech in which the title is personified. * * * (272 P. at page 1047)." Compare also Restatement, Torts § 624 (1938).

Appellant in attempting to establish that the facts in this case constitute a cause of action for slander of title rely heavily on the case of Gudger v. Manton, 1943, 21 Cal.2d 537, 134 P.2d 217 wherein a creditor of the therein plaintiff's wife recorded an attachment against the plaintiff's land to the extent of the wife's interest. The wife had no interest in the land and the court held that there was a slander of plaintiff's title because the attachment implied that the wife did have some interest. Appellant argues that the contract recorded implies that appellees have some interest in the timber and, that being untrue, slander of title resulted. A wrongful attachment action is similar in import to slander of title action in that the damage caused by each is an impairment of vendability. It will be noted that in Gudger v. Manton the court cited attachment cases as being analogous in determining the measure of damages and moreover a wrongful attachment formed the basis of the slander of title there involved. In the absence of a decision of the California Courts as to what statute of limitations applies in slander of title cases, and because of the close analogy of the gist of slander of title and wrongful attachment cases we turn not without justification to the holdings of the California Courts as to the applicable statute of limitations in attachment cases. As will be seen, those cases demonstrate that as indicated by the Italiani case, section 339, subd. 1 is the applicable statute in this case.

In Wood v. Currey, 1881, 57 Cal. 208, the defendant recorded an attachment on the plaintiff's land although he had no interest in the land and notwithstanding

plaintiff was not indebted to him. The court did not label the cause of action, but simply stated that the liability was one in tort and that defendant was guilty of a breach of duty when he caused an execution to be issued upon a satisfied judgment. The court citing section 339, subd. 1 stated that "two years is prescribed as the period within which must be commenced an action upon an obligation or liability not founded upon an instrument in writing. 'Liability' is defined; 'Amenability' to or responsibility to law; the condition of one who is subject to a charge or duty which may be judicially enforced (57 Cal. at page 209)." It held the action there involved to be within the meaning of that section. While the action was not labelled slander of title, we see no significant difference beween the cause of action pleaded in Wood v. Currey and that in Gudger v. Manton, supra upon which appellant relies to support his cause of action—at least insofar as the issue of limitations is concerned.

In the two cases Wood v. Currey, supra, and Sharp v. Miller, 1881, 57 Cal. 431 (which was almost an identical situation as in Wood v. Currey and wherein the court also held section 339, subd. 1 applicable) it was held that the period of limitations started running from the day of the recording. Thus in Wood v. Currey it was stated that the period began "when the execution was wrongfully issued and levied (57 Cal. at page 210). A similar holding appears in Sharp where the argument was made that one Forbes had bargained to purchase the property involved but had refused when he became aware of the recorded attachment and thus it was contended the refusal pin-pointed the time when the period of limitations began to run. That argument was rejected. In Wood v. Currey it was contended that the time did not start running until the damages had accrued and that contention was rejected.

Here appellant urges that the cause of action should not be considered as accrued until he knew of the recording at

least as to Huber and Goodwin because of the fiduciary relationship existing, this despite the public nature of the recording. See Bennett v. Hibernia Bank, 1956, 47 Cal.2d 540, 305 P.2d 20. Even though such a contention might be made under some circumstances, it has no validity here because appellant had knowledge of the impediment to the sale for more than two years before he filed this action in November of 1956. This knowledge was gained from the fact that he was unable to consummate the sale in July 1954 because of the recorded encumbrance.

In support of his assertion that the claim is not barred, appellant argues that the alleged tort is a continuing one as long as the contract is of record. Whether or not such is the case, it does not fix the time that the statute begins to run in the situation of this case. See Wood v. Currey, supra and Sharp v. Miller, supra. The gist of the action is the impairment of vendability and that occurred immediately upon recording notwithstanding the actual purchase was not deferred at that time but later. Sharp v. Miller, supra. See also McCusker v. Walker, 1888, 77 Cal. 208, 19 P. 382. The loss of market value of property is the usual measure of damages. Compare Gudger v. Manton, supra with Davis v. Wood, 1943, 61 Cal.App.2d 788, 143 P.2d 740. The Restatement, Torts § 633 (1938) sets out the damages recoverable in an action for slander of title to be restricted to: "that pecuniary loss which directly and immediately results from the impairment of the vendability of the thing in question caused by publication of the disparaging matter, and the expense of litigation reasonably necessary to remove the doubt cast by the disparagement upon the other's property in the thing or upon the quality thereof." Further it is stated in comment (d) of the same section: "the extent of the pecuniary loss caused by the prevention of a sale is determined by the difference between the price which would have been realized by it and the salable value of the thing in question after there has been a sufficient time following the frustration of the sale to permit its marketing. * * *" Since the Restatement definition of the tort of slander of title was adopted by the Supreme Court of California in Gudger v. Manton, supra, we are justified in assuming that said court would be persuaded to follow the section defining damages for the tort. Here appellant goes beyond the permissible field of damages defined in the Restatement in seeking damages for the loss of the use of the money he would have had in July of 1954 had the sale been made then. Comment (g) of section 633 of the Restatement is labelled "consequential damages" and it states that damages for slander of title do not include "failure to make an advantageous use of the money which he would have made had the sale been consummated, since this is not the direct consequence of the loss of the sale itself but depends upon the situation of the disappointed vendor and the particular purposes to which it would have been necessary or advantageous for him to apply the purchase money. * * *" Because the loss due to the non-availability of the money is greater each day, that does not extend the time of suit. As the Restatement indicates, such damage is only consequential to the direct damage of the drop in market value. In any event such consequential damages that attach to direct damages if available at all, are available only as long as suit for direct damages remain within the limitation statute. Tax payments would also be consequential at best, see Restatement, Torts § 633 and similarly barred.[5]

5. It should be noted from what we have just observed that the complaint most likely fails to state a cause of action as no direct damages are alleged. See Gudger v. Manton, supra; Restatement, Torts, § 624. It should be noted moreover that the amended complaint does not state the amount of money eventually received in the sale to the State as finally consummated. It is possible that the appellant received more eventually than he would have if the sale were consummated at the original time.

Having reached the conclusion that the two year statute of limitation applies and that there was a failure to bring the action within that time, the dismissal by the trial court is affirmed on that ground.