Filed 10/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| ELLEN WILLIAMS,<br><br>        Petitioner,<br><br>v.<br><br>SUPERIOR COURT FOR THE COUNTY OF CONTRA COSTA,<br><br>        Respondent;<br><br>JEFFEREY FAUTT,<br><br>        Real Party in Interest. | A163389<br><br>(Contra Costa County Super. Ct. No. N-21-0882) |

Petitioner Ellen Williams, the defendant in the underlying civil harassment proceeding (Code Civ. Proc., § 527.6[1]), seeks writ review of an order denying her motion to change venue to her county of residence. We issued an Order to Show Cause (OSC) why Williams's writ petition should not be granted and now grant her petition. In so doing, we reject real party in interest Jefferey Fautt's assertion that his harassment claim is one "for injury to person" as that terminology is used for purposes of the general venue statute (§ 395, subd. (a)) and also reject his claim that the "Venue" provisions of Judicial Council form CH-100 ("Request for Civil Harassment

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Restraining Orders") provide a basis for venue in the county where the harassment allegedly occurred.

## BACKGROUND

Williams and her husband hired Fautt, a general contractor, to build their home in Pleasanton. The Williams's eventually parted ways with Fautt, resulting in highly contentious e-mail and phone communications on numerous issues, including Fautt's entry onto the property to retrieve his tools and equipment. Williams fired off these communications from either her home in Pleasanton (in Alameda County) or her husband's office in Modesto (in Stanislaus County).

Fautt filed the instant civil harassment action in Contra Costa County and sought and obtained the same day an ex parte temporary restraining order (TRO) against Williams. Williams disputes Fautt's allegations and the need for any immediate injunctive relief.

Williams timely moved to change venue to Alameda County, her county of residence. She also sought to "void" the TRO on the grounds it was issued in the absence of proper venue and was "based on perjured testimony." As Williams pointed out, the civil harassment statute, itself, does not contain any provisions pertaining to venue. (§ 527.6.) She therefore maintained the general venue statute, section 395, subdivision (a) governed and under that statute venue is proper only in the county where she resides.

Fautt made two arguments in response. He first pointed out that under section 395, subdivision (a) an action "for injury to person or personal property . . . from wrongful act or negligence" may be brought "in either the county where the injury occurs . . . or the county where the defendant[] . . .

reside[s]."[2] (§ 395, subd. (a).)  And he "alleged in his petition he has suffered substantial and serious emotional distress, and physical injury (a worsening of his underlying heart condition)" as a result of Williams's asserted harassment.[3]

Second, Fautt relied on the Judicial Council CH-100 Form "Request for Civil Harassment Restraining Orders," pointing to section five, entitled "Venue."  That section asks "Why are you filing in this county?", directs the filer to "*(Check all that apply),*" and provides three options:  "a. [] The person [against whom an order is sought] lives in this county.  b. [] I was harassed by the person [against whom an order is sought] in this county.  c. [] Other (*specify*): _____."  (Jud. Council form CH-100, p. 2.)  Fautt checked the second option since he received and was impacted by the allegedly harassing and threatening communications in Contra Costa County.

The trial court denied Williams's motion on the basis of the Judicial Council form, stating " 'I have to believe that the Judicial Council knew what it was doing' " and that it " 'would not have written the venue check option the way [it] did unless [it] thought [its] words conveyed a correct basis for venue.' "  The court concluded the Council's " 'view [was] entitled to weight' " and the court " 'should defer to it.' "

---

[2]  For purposes of her writ petition, Williams has assumed Fautt did, in fact, receive the allegedly harassing communications in Contra Costa County.

[3]  Specifically, Fautt alleged that Williams's harassment caused him "to suffer substantial stress, anxiety, loss of sleep and emotional distress, and has aggravated my pre-existing heart condition," and further alleged, that as a result of Williams's conduct "an underlying heart condition I have has worsened, my stress and anxiety have increased to unhealthy levels, I have suffered an extreme loss of sleep, and my doctor recently prescribed medications to help me cope with these health issues."

3

# DISCUSSION[4]

## *Venue Fundamentals*

Pursuant to section 400, a party aggrieved by an order granting or denying a motion to change venue may petition for a writ of mandate requiring trial of the case in the proper court.  (*Dow AgroSciences LLC v. Superior Court* (2017) 16 Cal.App.5th 1067, 1072 (*Dow AgroSciences*).)  The standard of review for an order granting or denying such motion is generally abuse of discretion.  (*State Bd. of Equalization v. Superior Court* (2006) 138 Cal.App.4th 951, 954.)  A trial court necessarily abuses its discretion, however, in denying a motion to change venue when venue is mandatory in a county other than the county where the action has been brought.  (*Ford Motor Credit Co. v. Superior Court* (1996) 50 Cal.App.4th 306, 309-310.)  Moreover, " 'de novo review is appropriate where, as here, an appellate court

---

[4] In his return, Fautt suggests we "may lack [appellate] jurisdiction" (capitalization omitted) because, he says, it is "unclear" whether civil harassment actions should be classified as " 'limited' " cases, and, if so, appellate jurisdiction would lie in the superior courts' appellate divisions.  He cites not a single case in support of this suggestion, and there is none.  While Fautt points out a court in a limited case can issue a temporary or preliminary injunction (§ 86, subd. (a)(8)), it cannot issue a permanent injunction.  (*Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 275 ["[i]n addition to limitations on the amount of the verdict, . . . a plaintiff in a limited civil action may not obtain a permanent injunction and has fewer rights for declaratory relief than a litigant in an unlimited case"].)  The ultimate relief provided for by the civil harassment statute is in the nature of permanent injunctive relief (albeit for a maximum period of five years, renewable for another five years (§ 527.6, subd. (j)(1)), rather than temporary or preliminary injunctive relief.  Indeed, temporary injunctive relief is also available under the statute (§ 527.6, subd. (d)).  Thus, it is no surprise that in the decade since this statute was enacted there have been a wealth of Court of Appeal decisions resolving issues arising in these cases, and no decision has even hinted an appeal should be taken to the appellate division, rather than the district Court of Appeal.

4

is engaged in the application of a statute to undisputed facts.' " (*Dow AgroSciences,* at p. 1076, quoting *Kennedy/Jenks Consultants, Inc. v. Superior Court* (2000) 80 Cal.App.4th 948, 960.)

" 'Venue is determined based on the complaint on file at the time the motion to change venue is made.' " (*Dow AgroSciences, supra,* 16 Cal.App.5th at p. 1076, quoting *Brown v. Superior Court* (1984) 37 Cal.3d 477, 482 (*Brown*).)

The general rule is that venue is proper only in the county of the defendant's residence. (*Brown, supra*, 37 Cal.3d at p. 483.) "It is well established that a defendant is entitled to have an action tried in the county of his or her residence unless the action falls within some exception to the general venue rule." (*Ibid.*; accord, *Kaluzok v. Brisson* (1946) 27 Cal.2d 760, 763 (*Kaluzok*) ["The right of a defendant to have an action brought against him tried in the county of his residence is an ancient and valuable right, safeguarded by statute and supported by a long line of decisions."].)

Thus, "[t]he right of a plaintiff to have an action tried in a county other than that of the defendant's residence is exceptional. If the plaintiff would claim such right [h]e must bring himself within the exception." (*Kaluzok, supra,* 27 Cal.2d at p. 763.) Moreover, when the plaintiff contends that the case fits within an exception to the general rule that venue is proper in the county of defendant's residence, any ambiguities in the complaint must be construed against the plaintiff towards the end that the defendant will not be deprived of the right to a trial in the county of his or her residence. (*Neet v. Holmes* (1942) 19 Cal.2d 605, 612.)

***Action for "Injury to Person"***

The general rule governing venue is set forth in the first sentence of section 395, subdivision (a), which states, "[e]xcept as otherwise provided by

5

law and subject to the power of the court to transfer actions or proceedings as provided in this title, the superior court in the county where the defendants or some of them reside at the commencement of the action is the proper court for the trial of the action."

The second sentence of subdivision (a) provides an exception to the general rule and states, in pertinent part, "[i]f the action is for injury to person or personal injury . . . from wrongful act or negligence, the superior court in either the county where the injury occurs . . . or the county where the defendants, or some of them reside at the commencement of the action, is a proper court." (§ 395, subd. (a).) Thus, where a claim is "for injury to person," the plaintiff has a choice with respect to venue—either "where the injury occur[ed]" or where the defendant resides. (*Ibid*.)

The courts have considered whether an action is one "for injury to person" in a number of cases. Three are of particular significance here.

In *Graham v. Mixon* (1917) 177 Cal. 88, 89 (*Graham*), our Supreme Court examined whether an action for libel is "one 'for injury to person,' and therefore, under the provisions of section 395 of the Code of Civil Procedure as such section has stood since 1911, is triable in the county 'where the injury occurs.'" The court held it is not, making the following illustrative points.

First, "[i]f the legislators intended to include 'libel' under the general designation 'injury to person,' it would follow that a man of state-wide reputation for good citizenship would be injured in his person in each county in which a libelous article regarding him would be circulated, and might select any one of such counties as the place for the commencement of his action against the publisher. Each county would be, as to him, 'the county where the injury occurs,' within the purview of section 395 of the Code of Civil Procedure. On the other hand, the man of local reputation might suffer

6

detriment only in the county or counties in which the attack upon his character would amount to an injury. There can be little doubt that the [L]egislature contemplated no such result when using the expressions, 'if it be an action for injury to person' and 'in the county where the injury occurs.' " (*Graham, supra,* 177 Cal. at p. 89.)

Second, "[i]f libel be an 'injury to person,' the victim has a broader field of action against the owner of a newspaper of general circulation publishing the libel than would be available to him if he should receive serious bodily hurt from the negligent operation of an automobile owned by a resident of a county other than the one in which the accident might occur. In the former case he might have as many places for the commencement of his action as there are counties in the state, while in the latter he would be limited to the county in which the accident occurred or that in which the owner of the motor car resided at the time of the infliction of the injury. We can think of no good reason why the [L]egislature should so broaden the venue of civil actions for libel while the [C]onstitution makes indictments found, or information laid, for publications in newspapers triable only in the counties where the publication offices of the newspapers are situated or in the counties where the parties libeled reside." (*Graham, supra,* 177 Cal. at pp. 89-90.)

The high court went on to point out the law had long recognized a distinction "between actions for libel and those arising out of physical interference with the person." (*Graham, supra,* 177 Cal. at p. 91.) Thus, in discussing section 395, the court had held "there exists a distinction between actions for libel and those arising out of physical interference with the person." (*Graham,* at p. 91.) Or stated another way, the court had "never regarded the section as one which applies, so far as actions for personal

7

injuries are concerned, to any but those based upon physical lesions." (*Id.* at p. 92.)

In *Monk v. Ehret* (1923) 192 Cal. 186, the high court considered whether a false imprisonment claim based on allegations of physical restraint by the defendant, is an action " 'for injury to person' " which can be brought " 'where the injury occurs.' " (*Id.* at pp. 190-191.)  The court held it is not— "[t]he specific terms indicate that the injuries to person within the contemplation of the [L]egislature were those which cause physical injury or incapacity or which result in death." (*Id.* at p. 193.)  The court further observed, "[t]here can be but little doubt that the increasing number of bodily injuries and deaths and injuries to property brought about by the general use of motor vehicles gave legislative suggestion for the amendment [allowing the plaintiff a choice of venue in actions for injury to person].  And, further, . . . the amendment . . . was passed . . . the same year that the first industrial accident board act was passed.  The legislation had to do with bodily or physical injuries or deaths resulting from injuries received in the line of various employments as by said act provided.  The legislative mind at that session of the [L]egislature was intensely engrossed with the subject of personal injuries and was not at all concerned with common-law trespasses [such as false imprisonment].  This is shown by the extent and character of legislation on the subject of physical injuries as contrasted with the fact that not a single code section defining false imprisonment, malicious prosecution, assault and battery, libel, or slander was amended or revised." (*Ibid.*)

In *Lucas v. Lucas Ranching Co.* (1937) 18 Cal.App.2d 453 (*Lucas*), the Court of Appeal brought the reasoning of the foregoing cases to bear where the plaintiff alleged, in connection with a claim that the defendants had conspired to interfere with her community property rights to render her

8

impecunious, that she suffered not only " 'grievous mental pain, anguish and suffering,' " but also " 'worry and loss of sleep, and impairment of her nervous and physical condition.' " (*Id.* at pp. 454-455.) The Court of Appeal held the cause of action was not one " 'for injury to person' " that could be brought where the " 'injury occur[ed].' " (*Id.* at p. 455.) The court recognized that unlike in *Graham* and *Lucas*, "the tort sued upon had resulted in actual physical injury to the plaintiff." (*Id.* at p. 456.) The reasoning of those cases, however, lead to the conclusion that the plaintiff's conspiracy claim was not a claim for "injury to person" as used in the general venue statute. (*Ibid.*)

The court explained, "[f]rom *Monk v. Ehret, supra*, [192 Cal. 186,] as interpreted in *Coley v. Hecker* (1928) 206 Cal. 22, 28 . . . , we learn that the inspiration for the language we are considering was the 'situation brought about by the increasing use of motor vehicles.' In motor vehicle accidents, as in other cases where physical injury is directly caused by what has happened, the injury occurs at the place where the happening occurs, and there is logic in having that place a proper one for the trial. In an action such as plaintiff's, however, the place where the injury occurs is not the locale of the events which, ultimately, cause the injury. She is injured not at the site of the events, but, brooding over the wrongs done her, at the place or places where worry and loss of sleep finally take their toll. No reason appears why an injury which has no definite situs should be given potency in determining the place of trial. Hence, we have concluded that this action, although one for injury to the person, as classified by section 27 of the Code of Civil Procedure, is not such an action within the meaning of section 395 of that code which, as we have seen, has a more restricted scope." (*Lucas, supra,* 18 Cal.App.2d at pp. 456-457.)

9

Neither the holding, nor reasoning, of *Lucas* has been criticized in the ensuing years.  (See *Cacciaguidi v. Superior Court* (1990) 226 Cal.App.3d 181, 185-186 [citing *Lucas* and holding malicious prosecution claim not an action "for injury to person"]; *Cubic Corp. v. Superior Court* (1986) 186 Cal.App.3d 622, 624-625 [citing *Lucas* and holding wrongful termination claim not an action "for injury to person"]; *Carruth v.* S*uperior Court* (1978) 80 Cal.App.3d 215, 219-220 (*Carruth*) [citing *Lucas* and holding malicious prosecution claim not an action "for injury to person"].)  As the *Carruth* court observed, "[i]n an action for malicious prosecution, as in the action in *Lucas,* the place where the personal injury occurs is not necessarily the locale of the events which ultimately cause the injury.  Such personal injury, with no definite situs, should not in reason determine the place of trial.  A construction of 'injury to person' permitting such a result would be in clear derogation of the right of a defendant to have an action brought against him tried in the county of his residence, 'an ancient and valuable right, safe-guarded by statute and supported by a long line of decisions. . . .' " (*Id.* at p. 220, quoting *Kaluzok, supra,* 27 Cal.2d at p. 763.)

In light of this well-established authority, we must conclude Fautt's allegations of physical ailment do not make his harassment claim one for "injury to person."  As in *Lucas,* so too here, "where the injury occurs is not the locale of the events which, ultimately, cause the injury."  (*Lucas, supra,* 18 Cal.App.2d at p. 456.)  Rather, Fautt's alleged physical injury "has no definite situs," (*ibid.*) and depending on where he read the allegedly offending e-mails or listened to the allegedly harassing phone calls, he could have claimed any county in the state was where the injury "occurred."  The case

10

law conclusively establishes such an injury is not an "injury to person" as this terminology is used in section 395, subdivision (a).[5]

### *Judicial Council Form*

As we have discussed, Fautt also, and, in fact, principally, relied on the "Venue" section of the Judicial Council CH-100 form ("Request for Civil Harassment Restraining Orders") in asserting venue is proper in Contra Costa County. Specifically, he invoked the second option set forth in the form which states: "b. [] I was harassed by the person [against whom an injunction is sought] in this county." (Jud. Council form CH-100, p. 2.) This also appears to have been the basis on which the trial court denied Williams's motion to change venue.

As Fautt points out, the civil harassment statute expressly directs the Judicial Council to "develop forms, instructions, and rules relating to matters governed by this section," and specifies such forms "shall be simple and concise" and that the use of such forms "is mandatory." (§ 527.6, subd. (x)(1).) In addition, "[a] temporary restraining order or order after hearing relating to civil harassment . . . shall be issued on forms adopted by the Judicial

---

[5] We note that had the Legislature, in enacting the civil harassment statute, wished to depart from the general venue rules set forth in section 395, it could have included a specific venue provision in the statute. It did so, for example, in the Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.). Claims brought under that statute "may be brought in any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked or would have had access to the public accommodation but for the alleged unlawful practice, but if the defendant is not found within any of these counties, an action may be brought within the county of the defendant's residence or principal office." (*Id.*, § 12965, subd. (b); see generally *Brown, supra,* 37 Cal.3d at p. 482.)

11

Council and that have been approved by the Department of Justice pursuant to subdivision (i) of Section 6380 of the Family Code."[6] (§ 527.6, subd. (x)(2).[7])

While the Judicial Council can be tasked with formulating rules and forms to augment and implement statutory and common law, its efforts must be consistent with, and not contrary to, the specific legislation directing it to act and other applicable law. (See *People v. Lemcke* (2021) 11 Cal.5th 644, 647–648 [concluding CALCRIM No. 315 was deficient and directing "Judicial Council of California and its Advisory Committee on Criminal Jury Instructions to evaluate whether or how the instruction might be modified to avoid juror confusion regarding the correlation between certainty and accuracy"]; *Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 555 ["[U]se of a Judicial Council form complaint is not a determinative factor in deciding whether or not to sustain a demurrer. Instead, a reviewing court must examine the particular allegations in the form pleading and determine whether those allegations satisfy the pleading requirements established by California law."]; *People ex rel. Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480, 1484 [checking box on Judicial Council complaint form insufficient to comply with general requirement that complaint state facts constituting cause of action].)

Accordingly, the Judicial Council cannot, by way of a form, alter the statutory law governing venue. Only the Legislature can amend section 395

---

[6] Family Code section 6380 pertains to the California Law Enforcement Telecommunications System (CLETS) of the Department of Justice. (Fam. Code, § 6380, subd. (a).)

[7] "However, the fact that an order issued by a court pursuant to this section was not issued on forms adopted by the Judicial Council and approved by the Department of Justice shall not, in and of itself, make the order unenforceable." (§ 527.6, subd. (x)(2).)

or include specific venue provisions within specific statutory schemes that override the general provisions of section 395. (See, e.g., *Brown, supra,* 37 Cal.3d at pp. 482-487 [holding FEHA special venue provisions govern as to all claims brought in a FEHA case].)

The second option set forth in the "Venue" section of the Judicial Council CH-100 form—that the party seeking a restraining order "was harassed [by the party sought to be enjoined] in this county"—is not necessarily in conflict with the provisions of section 395. There may be cases in which the alleged harassment consists of abusive physical conduct by the harasser inflicting physical injury on the victim. Or, in other words, there may be harassment cases in which the locale where the alleged physical injury occurs is necessarily the locale where the events causing the injury occurred, and thus the injury has a definite situs. (See *Carruth, supra,* 80 Cal.App.3d at p. 220; *Lucas, supra,* 18 Cal.App.2d at p. 456.) However, given the broad definition of "harassment" in the statute—which, in addition to "unlawful violence," includes "a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose" (§ 527.6, subd. (b)(3))—that may often not be the case, the instant case being an example.

In short, the mere fact that a party seeking a civil harassment restraining order checks the second box in the "Venue" section of the Judicial Council CH-100 form is not conclusive as to venue. Rather, when venue is challenged, the trial court must examine the allegations set forth in the form to determine whether the claim is one "for injury to person" as that terminology is used and understood in the context of the law governing venue.

13

In the instant case, Fautt's allegations do not establish that his claim is one "for injury to person" for purposes of venue, and under the controlling law, Williams was entitled to have the case transferred to Alameda County, her county of residence.

***Validity of Temporary Restraining Order***

In addition to transferring the case to Alameda County, Williams also sought to have the TRO declared "void" due to improper venue and because Fautt assertedly committed perjury in procuring it. Neither asserted ground supports declaring the TRO "void."

Williams relies on *County of Riverside v. Superior Court* (1968) 69 Cal.2d 828 in support of her contention that the TRO should have been "void[ed]" due to improper venue. In that case, *after* the defendant filed a motion to change venue, the trial court issued a TRO and order to show cause. (*Id.* at pp. 829-830.) The high court held the defendant was entitled to a change of venue and to have the TRO set aside because issuing it "pending" disposition of the defendant's motion to change venue "exceeded the authority of [the] court." (*Id.* at p. 831.) The court cited to *Nolan v. McDuffie* (1899) 125 Cal. 334, 336-337 and *Beard v. Superior Court* (1940) 39 Cal.App.2d 284, 286 (*Beard*)[8], both of which articulate the general rule that "the filing of a motion for the change of place of trial suspends the power of the trial court to act upon any other question until the motion has been determined." (*Beard,* at p. 286.)

Williams cites no authority suggesting, let alone holding, that emergency orders issued *prior* to the filing of motion to change venue are "void" if the trial court subsequently determines the case is improperly

---

[8] Superseded by statute on another ground as stated in *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1304-1305.

14

venued and must be transferred to a different county. Nor are we aware of any such authority.

It is also well-established that venue is not a matter that goes to the fundamental jurisdiction of the superior court to hear and rule on a case. (See § 396b, subd. (a) ["court having jurisdiction of the subject matter thereof" may try case unless defendant makes a timely and successful objection to venue]; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 120-122 [noncompliance with venue provisions "does not deprive the trial court of jurisdiction over the subject matter of the litigation and does not render a judgment erroneously entered 'void' for lack of jurisdiction"].)

Accordingly, the fact the case was not properly venued did not render the TRO a legal nullity. Indeed, were that the case, it would cripple the superior courts' ability to issue immediate protective orders in cases where the harassment victim alleges that venue is proper and makes a prima facie showing he or she faces imminent abusive conduct, particularly physical abuse and the risk of serious personal injury. The courts are, and must be, empowered to grant such relief, and to do so ex parte, to fully effectuate the protective purposes of the statute. (§ 527.6, subd. (d).)[9] The defendant is certainly entitled to promptly challenge venue, and if successful in doing so, to litigate the merits of the harassment claim in the appropriate superior

---

[9] Section 527.6, subdivision (d) provides: "Upon filing a petition for orders under this section, the petitioner may obtain a temporary restraining order in accordance with Section 527, except to the extent this section provides an inconsistent rule. The temporary restraining order may include any of the restraining orders described in paragraph (6) of subdivision (b). A temporary restraining order may be issued with or without notice, based on a declaration that, to the satisfaction of the court, shows reasonable proof of harassment of the petitioner by the respondent, and that great or irreparable harm would result to the petitioner."

15

court. But that does not mean the victim of alleged harassment cannot obtain, and rely on, a TRO issued by the court he or she believes has venue over the case.

As for Williams's claim that the TRO is "void" because Fautt allegedly committed perjury in procuring it, that is an argument going to the merits of Fautt's harassment claim and not one properly advanced in this writ proceeding challenging venue. Williams's recourse is, on transfer to the Alameda County Superior Court, to either seek modification or termination of the TRO (§ 527.6, subd. (f)) or to make her case on the merits at the contested hearing on a restraining order. (§ 527.6, subds. (g), (h), (i).)

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its August 13, 2021 order to the extent it denies Williams's motion to change venue, and to grant that motion and change venue to Alameda County. The stay previously issued by this court shall be dissolved upon the issuance of the remittitur. Petitioner is entitled to appellate costs.

16

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Sanchez, J.

A163389, Williams v. Superior Court

Trial Court: Contra Costa County Superior Court

Trial Judge:        Hon. Gina Dashman

Counsel:

Law Offices of James M. Braden and James Braden for Petitioner.

No appearance for Respondent.

Litigation Advocates Group and Scott Hammel for Real Party in Interest.